BOARD OF LEVEE INSPECTORS OF CHICOT COUNTY *v.* SOUTH-WESTERN LAND & TIMBER COMPANY.

Opinion delivered April 20, 1914.

1. EQUITY—CANCELLATION OF PATENTS—DILIGENCE—LACHES.—In an action to cancel swamp land patents, the attacking party must show due diligence, in showing that the patents were improperly issued, and after a delay of thirty years in bringing such action, the doctrine of laches will be applied, and plaintiff will be denied relief. (Page 473.)

2. CANCELLATION OF PATENTS—LACHES.—It is no excuse that a levee inspection board only recently learned of certain old patents issued to defendant over thirty years before the bringing of the action to cancel the same, since the transactions were matters of record, and a knowledge thereof could have been obtained by the exercise of reasonable diligence. (Page 474.)

3. LACHES—GOVERNMENTAL AGENCIES.—The maxim, *nullum tempus occurrit regi*, applies only to the sovereign itself, and does not apply to public corporations or other such governmental agencies to whom powers are delegated. (Page 476.)

4. LEVEE DISTRICTS—NATURE AND POWERS.—Levee districts are only governmental agencies, clothed with such powers as are expressly conferred or arise by necessary implication. (Page 476.)

5.  LEVEE DISTRICTS—LEVEE BOARD—LACHES.—A levee board is not exempt from the application of the doctrine of laches. (Page 476.)

Appeal from Poinsett Chancery Court; *Charles D. Frierson*, Chancellor; affirmed.

*Wm. Kirten* and *Moore, Smith & Moore*, for appellant.

1.  One who wrongfully obtains a patent by fraud or through mistake, becomes a trustee for the equitable owner of the title, and the statutes of limitation do not begin to run, nor can the doctrine of laches apply, until the *cestui que trust* has knowledge of his rights or is apprised of facts from which arose the trust. 44 Ark. 454; 49 *Id.* 93; 84 *Id.* 12; Perry on Trusts, etc. (6 ed.), § § 168, 169, 170; 46 Ark. 25; 58 *Id.* 84; 20 Mo. 541; Wood on Limitations, etc., § 215; Perry on Trusts, § 861.

2.  The board had no knowledge of the fraud until the decision in 93 Ark. 621. 3 DeGex & Jones, 547; 76 Ark. 525; Devlin on Deeds, 712.

3.  No title has been acquired by constructive possession. 34 S. W. 215.

4.  Mere laches is not sufficient. Delay working disadvantage must occur. 75 Ark. 197; 55 *Id.* 93; 76 *Id.* 525; 99 *Id.* 505; 81 *Id.* 432. Unless a party has knowledge of his rights, he is not estopped by laches. 145 U. S. 368; 82 Ark. 367; 146 U. S. 99; 148 *Id.* 370; 37 N. W. 558; 29 N. Y. 250; 105 N. W. 724.

*F. H. Sullivan*, for appellee.

1.  Lapse of time has made the patent conclusive. 84 Ark. 12.

2.  Appellant is subject to the statute of limitations. 17 Fed. 86; 191 *Id.* 251; 197 U. S. 200. It is not the State, but only a public corporation. 41 Ark. 49; 131 U. S. 1; 68 L. R. A. 272.

3.  The general statute of limitations is a bar. 58 Ark. 95; 49 *Id.* 475; 46 *Id.* 34. Mere ignorance does not prevent the running of the statute unless there is fraudulent concealment. 85 Ark. 589; 121 Cal. 288; 7 John.,

Chy., 90; 4 Mason 152; 61 Miss. 696; 2 Perry on Trusts (6 ed.), § 865, p. 1419 (note).

4. Appellant is barred by laches. 103 Ark. 58; 95 *Id.* 182; 55 *Id.* 92; 41 *Id.* 303; 81 *Id.* 438.

5. Excusable ignorance will not now avail. 75 Ark. 319; 169 U. S. 241; 145 *Id.* 329. Appellant is the same corporation and chargeable with notice. 93 Ark. 630; 28 Cyc. 247; 1 Dillon on Municipal Corporations, § § 637, 338, 340.

6. No diligence is shown. 75 Ark. 319; 58 Fed. 472; 71 *Id.* 19; 5 Pom., Eq. Jur., § § 27, 28.

McCulloch, C. J. The Board of Levee Inspectors of Chicot County instituted this action in the chancery court of Poinsett County against the Southwestern Land & Timber Company, a corporation organized under the laws of the State of Arkansas, to cancel swamp land patents to certain tracts of land in that county, aggregating 14,700 acres, executed to said defendant on August 11, 1883, by the Commissioner of State Lands.

It is alleged in the complaint that the original certificates of entry of these lands were issued by the State on March 5, 1860, to the plaintiff's predecessor, and that the defendant came into possession thereof under a void assignment and fraudulently obtained patents thereon from the State Land Commissioner.

The defendant filed its answer, setting up the fact that it was an innocent purchaser of the property; that the cause of action was barred by the statute of limitations, and also that plaintiff was barred by its own laches in failing to institute the action within a reasonable time. It also pleaded that it held title under valid patents, and that the assignment of the certificates of entry upon which the patents were issued was a valid act of the holder of said certificates.

The Legislature enacted a statute, approved January 7, 1857, authorizing the election of five levee inspectors in Chicot County to supervise the construction and repairing of levees in that county, and pursuant to the terms of the statute the five persons named as such in-

spectors met, organized as a board and proceeded to discharge their duties under the act, and laid off the county into five levee districts.

The General Assembly of 1861 passed another statute entitled "An Act to protect all land in Chicot County which is subject to overflow," and authorizing the qualified electors of the county to elect five swamp land commissioners, and providing that the districts then established in that county, known as levee districts, should thereafter be known as swamp land districts.

In the case of *State* v. *Southwestern Land & Timber Co.,* 93 Ark. 621, this court held that the Swamp Land Commissioners provided for under the act of January 10, 1861, were successors to the Board of Levee Inspectors provided for in the act of January 7, 1857, and that the act of March 20, 1883, providing for the building and repairing of levees in Chicot County in effect revived the act of January 7, 1857, and "as a consequence property owned by the boards created by the earlier acts passed in succession to the board created by the later act."

The effect of that decision is that plaintiff in this action, The Board of Levee Inspectors of Chicot County, is the successor of the boards provided for in the prior acts referred to above, and that the plaintiff succeeds to any property rights held by its said predecessors

On May 5, 1857, the Board of Levee Inspectors met and passed a resolution authorizing and instructing C. W. Campbell, the president of the board, to apply to and contract with the State Engineer for the building of all levees in Chicot County which could be built ünder the provisions of the act of January 13, 1857, which authorized the Governor, on the recommendation of the State Engineer, to let contracts to close all gaps in levees previously constructed, and pay for the work in money out of the swamp land funds, and where there were no swamp land funds in the treasury to issue certificates which could be exchanged at the Auditor's office for levee warrants when there was money in the treasury to apply on the payment of the warrants.

Pursuant to that authority, Campbell entered into twenty, or more, contracts, for and on behalf of the Board of Levee Inspectors, with the State of Arkansas, acting by and through the State Engineer, for the construction or repair of certain portions of the levee in that county, and on December 2, 1857, the Board of Levee Inspectors again met and ordered the president to sublet at private lettings contracts which he had made with the State, requiring the said subcontractors to receive payment for work at such time and in the manner that he should receive payment from the State under the contracts with the State, and to receive the same rates as should be paid by the State, "unless said work can be subcontracted at less rates."

Pursuant to that authority, Campbell sublet the contracts to do the levee work, and he afterwards received from the State certificates (there being no swamp land funds in the treasury), aggregating the sum of $19,041.00 in payment for the work done under the contract. These certificates were not delivered to the subcontractors in payment for work as stipulated in the former resolution of the board, but were held by the president, one Daniel H. Sessions, who had been elected to succeed Campbell.

The records of the Board of Levee Inspectors disclose the fact that from time to time accounts were filed with the board by subcontractors showing the amount of work done, and certificates were issued to them.

Sessions, as president of the board, and pursuant to a resolution of the Board of Levee Inspectors, used those certificates in purchasing from the State the lands in controversy, and certificates of entry were duly issued by the swamp land agent to Sessions as president of the board.

On December 5, 1867, Sessions executed to D. H. Reynolds a power-of-attorney, reciting the purchase of these lands, and others, the issuance of certificates of entry to Sessions as president of the board, and a resolution of the board adopted at a meeting held on September 2, 1867, appointing Reynolds as the agent and attorney-in-

fact of the board "to take charge of all of said lands, and to sell and dispose of the same, or any part thereof, upon such terms as to him might seem best, and to redeem any of said lands that may have been heretofore sold or forfeited for nonpayment of taxes, and to pay taxes upon any of said lands from time to time," and proceeding to constitute Reynolds as the attorney-in-fact of said Board of Levee Inspectors, and for him (Sessions), as president, "to sell and convey all of the lands mentioned in said certificates to such person or persons, and for such price as he shall think fit and convenient, and to assign and transfer any or all of said certificates, or to make and execute any deeds or other instruments in writing in relation to the sale of any or all of the said lands, and of the transfer of any or all of said certificates."

On January 10, 1882, Reynolds, pursuant to the power conferred upon him as aforesaid, assigned the certificates of entry to John T. Burns, and on August 10, 1888, Burns assigned the same to defendant, and on the following day the defendant applied to the Commissioner of State Lands for patents, which were duly issued.

It is contended, in substance, that the title to the lands was vested in the Board of Levee Inspectors of Chicot County, the predecessor of plaintiff; that the power of attorney, purporting to authorize Reynolds to assign the certificates, was void for the reason that the Board of Levee Inspectors could not delegate to Reynolds the authority to sell the lands, and that Sessions had no power, as president of the board, to do so; that the assignment by Reynolds was absolutely void, and that the procurement of patents operated as a fraud upon the rights of the plaintiff as the successor in title to the original owner of the lands.

The chancellor denied the relief sought and dismissed the complaint for want of equity.

We are of the opinion that the conclusion reached by the chancellor was the correct one. He denied the relief upon several of the defenses put forward by the defendant, but, without passing upon them all, we are content

to affirm the decree on the ground that the relief should not be granted for the reason that the cause of action is barred by laches. The facts present a typical case for the application of that equitable doctrine. This action was instituted about thirty years after the certificates were assigned and the patents thereon were issued. The issuance of the patents created a presumption that the officer of the State charged with that duty investigated the facts and issued the patents to the proper persons. *Osceola Land Co.* v. *Chicago Mill & Lumber Co.*, 84 Ark. 1. This put the burden on the attacking party to show that the assignment of the certificate was void, and that the patents were issued to one who was not entitled to receive them.

The plaintiff comes into equity to invoke the peculiar jurisdiction of that court and must show that it has proceeded with diligence under such circumstances that it is not open to the charge of lack of diligence, for, as has been repeatedly said by this court (quoting the language of another), "Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting, the court is passive, and does nothing." *Gibson* v. *Herriott*, 55 Ark. 85.

The lands were of very little value at the time the patents were issued to the defendant, and have increased more than ten-fold in value since that time. The defendant has paid out large sums of money in the discharge of tax liens for State and county taxes, as well as levee taxes, and, above all that, lapse of time has caused the obliteration of the evidences upon which the good faith of the transaction and the authority for the transfer of these certificates rest. Nearly every one connected with the original transaction has been dead many years, and the evidence is only fragmentary. What purports to be the record of the old levee board is in existence in the hands of the county clerk of Chicot County, but it is in dispute whether this in the original record or whether it is complete. There is much testimony, perhaps enough to show a preponderance, in favor of a finding that a con-

siderable portion of that record book has been mutilated and that a considerable portion of it is gone. The evidence is disputed whether there was a valid meeting of the Board of Levee Inspectors in 1867 at the time when it is claimed Reynolds was constituted the agent and attorney-in-fact of the levee board to dispose of the lands. There is only one person living who pretends to know anything about the transactions of the old Board of Levee Inspectors, and he is an old man from whose memory most of the facts have faded. D. H. Reynolds, who appears to have been the principal actor and central figure in the transactions which involve the title to the lands, has been dead several years, and his testimony is therefore lost. It is probable that he, more than any other person, could have given an account of the facts upon which his authority rested, or whether his sale and transfer of the certificates had ever been ratified.

These changes occurred by lapse of time and are sufficient to call for the application of the equitable doctrine of laches, which bars any recovery in this case. *Osceola Land Co.* v. *Henderson,* 81 Ark. 432; *Dickson* v. *Sentell,* 83 Ark. 385; *Segers* v. *Ayers,* 95 Ark. 178; *Finley* v. *Finley,* 103 Ark. 58; *Davis* v. *Harrell,* 101 Ark. 230.

In the case last cited above, we quoted from the Supreme Court of the United States in *Galliher* v. *Cadwell,* 145 U. S. 368, as follows:

"The cases are many in which this defense has been invoked and considered. It is true that, by reason of their difference of facts, no one case becomes an exact precedent for another. Yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that, because of the change in conditions or relations during this period of

delay, it would be an injustice to the latter to permit him to now assert them."

But it has been said that the doctrine should not be applied because the present members of the board did not become aware of their rights until this court rendered the opinion in the case of *State* v *Southwestern Land & Timber Co., supra,* holding that the State had no right to recover these lands, and that the plaintiff succeeded to the rights of the old board of levee inspectors. It is claimed that they accidentally learned, upon the rendition of that decision, that the board had rights in these lands, and that they proceeded with diligence then to sue to recover.

This is no excuse for the delay, for the reason that the transactions were matters of record, and could have been ascertained by any degree of diligence on the part of those who had in charge the interest of the district. It is no excuse under those circumstances to say that they had no knowledge of the facts, for there has been no concealment, and the authorized agents of the districts were chargeable with knowledge of all facts which could have been ascertained by reasonable diligence. *Williams* v. *Bennett,* 75 Ark. 312.

The proof in this case shows further that several members of the board were living for years after these certificates were transferred, and some of them were men who had originally belonged to the levee board, when they knew, or ought to have known, that the certificates had been issued to Sessions as president of the board. At any rate, the transactions were of a public nature, and the records of the land office would have shown to any investigator the source of these titles, and the plaintiff can not, under those circumstances, hide behind lack of knowledge on the part of the members of the board in order to escape the force of their negligence.

We have never before decided the questionly directly whether a levee board, or other governmental agency, is exempt from the application of the doctrine of laches.

In *Book* v. *Polk,* 81 Ark. 244, the court held that the
St. Francis Levee District was estopped by the conduct
of its officers; and in *City of Fort Smith* v. *McKibbin,* 41
Ark. 45, it was held that municipal corporations are
bound, the same as individuals, by the statute of limita-
tions, unless the statute expressly provides otherwise.

The well recognized rule is that the maxim, *nullum
tempus occurrit regi,* applies, only to the sovereign itself,
and not to public corporations or other such governmental
agencies to whom powers are delegated. Levee districts
are, as we have said in many cases, only governmental
agencies, clothed with such powers as are expressly con-
ferred or arise by necessary implication. They are, how-
ever, *quasi*-corporations, with power to sue and be sued.
*Board of Directors St. Francis Levee District* v. *Fleming,*
93 Ark. 490.

If such agencies are barred by the statute of limita-
tions, they are equally barred by delay of enforcement of
rights under circumstances which would invoke against
individuals the equitable doctrine of laches. *Metropolitan
Railroad Co.* v. *District of Columbia,* 132 U. S. 1; *Iowa*
v. *Carr,* 191 Fed. 257; *Johnson* v. *Black,* 103 Va. 477, 68
L. R. A. 264.

The application of this doctrine comes with peculiar
force in the present case, for the reason that the plaintiff,
through its president, held title to these lands merely for
the purpose of discharging its obligations to the subcon-
tractors who built the levee. It may be conceded to be
true, as claimed by learned counsel for the plaintiff, that
the claims of the subcontractors may have been dis-
charged, or may be barred by the statute of limitations,
and yet the plaintiff have the right to hold the lands; but
the fact that it was acting merely as trustee and holding
the lands for the purpose of raising a fund to discharge
the obligations to the subcontractors, who were really en-
titled to the proceeds, makes it inequitable for the plain-
tiff at this late day to sue to set aside a conveyance which
the evidence, if still preserved, might show had been
made for the purpose of raising funds to pay off those

just obligations, and that the funds were so applied.  It can not be known what are the real facts of the transaction, for, on account of the mutilation of records and the death of witnesses, evidence which might clear up this transaction has been lost.

Without undertaking to pass upon the other ·defenses presented, we hold that this action is barred by laches, and that the decree of the chancellor was, on that account, if no other, correct.  Affirmed.