DRAINAGE DISTRICT No. 7 OF POINSETT COUNTY *v.*
HUTCHINS.

Opinion delivered November 2, 1931.

522

524

*Chas. D. Frierson,* for appellant.

*Ogan & Shaver, S. H. Mann* and *Walter N. Killough,* for appellee.

Hart, C. J., (after stating the facts). The office of the writ of prohibition is to restrain the exercise of jurisdiction by an inferior court over a subject-matter where it has none or over parties where it can acquire none. *Order of Railway Conductors of America* v. *Bandy,* 177 Ark. 694, 8 S. W. (2d) 448, and cases cited.

This brings to our consideration the question whether the chancery court had jurisdiction to proceed further under the allegations of the complaint filed in the Cross Chancery Court by the landowners against Drainage District No. 7 of Poinsett County and the commissioners thereof. The whole question has been ably and exhaustively discussed by counsel on both sides in various forms and numerous authorities cited and reviewed with reference thereto. The conclusion which we have reached renders it unnecessary to consider and determine all the points raised by counsel; and in the determination of the question it will be our aim to confine our discussion to the issues necessarily raised by the plea to the jurisdiction of the Cross Chancery Court.

According to the allegations of the complaint, Drainage District No. 7 was created by the Legislature of 1917, and the lands within its boundaries were all situated in

Poinsett County. The dam, levees and other improvements, which it is alleged would divert the waters, were to be erected in Poinsett County, whereby the lands of the plaintiffs in Cross County would be flooded and permanently injured.

In a case note to *People* v. *Selby Smelting & Lead Co.*, 163 Cal. 84, 124 Pac. 692, Ann. Cas. 1913E, 1267, at 1272, it is stated that the holding in the reported cases to the effect that an action to abate a nuisance maintained wholly in one county may be brought in another county where injury therefrom is suffered, finds no support in the authorities. The general rule is stated that an action to abate a nuisance is local, and must be brought in the county where the nuisance exists. Several cases are cited in support of the text by the annotator.

We do not deem it necessary to review the authorities there cited or the numerous other authorities on the question cited by counsel in their respective briefs, for the reason that we believe that the question has been decided otherwise by this court in *Cox* v. *Railway Company*, 55 Ark. 454, 18 S. W. 630, decided February 13, 1892, where it was held that a suit to restrain defendants from removing earth from plaintiff's lands is an action "for an injury to real property," within the meaning of § 4994 of Mansfield's Digest, and must be brought within the county where the land lies. This was a suit by a landowner to enjoin the defendant railway company from removing earth from certain lands of the plaintiff situated in Prairie County over which the defendant's railroad passed. The plaintiffs alleged that the defendant had acquired no right-of-way over the land, but was carrying away from his land a large quantity of earth to be used in building its roadbed across Cache River bottom. The suit was brought in Pulaski County, where, it is alleged, the company had its principal office. Upon appeal, the court said that the objection of the defendant to the venue was well taken, and that the complaint was properly dismissed. It was the contention of the defendant that the action was local under our statute, and that

it therefore should be brought in Prairie County where the land was situated.

The statute involved in that case was § 4994 of Mansfield's Digest, which is § 1164 of Crawford & Moses' Digest. The section reads as follows:

"1164. Where the subject of action is situated. Actions for the following causes must be brought in the county in which the subject of the action, or some part thereof, is situated;

"First. For the recovery of real property, or of an estate or interest therein.

"Second. For the partition of real property.

"Third. For the sale of real property under a mortgage, lien or other incumbrance or charge.

"Fourth. For an injury to real property."

It was claimed by counsel for the landowner that the fourth subdivision of the section applies only to actions for the recovery of damages for trespass and other like injuries. The court said that it observed no distinction between proceedings at law and proceedings in equity in the rule prescribed in determining the venue in actions. It was further stated that a cause of action is local under the Code, because the statute has made it so.

It was further argued that, as the remedy by injunction acts only upon the person of the defendant, the venue is transitory; but the court held otherwise. It was expressly stated that if the suit was "for an injury to real property," under the fourth subdivision of the section, then the statute imperatively required it to be brought in Prairie County where the land was situated. The court said:

"The term 'injury' is used in § 4994 in a technical sense, and as meaning every wrong which in legal contemplation is an injury to real property. This embraces, not only injuries committed directly and forcibly for which an action of trespass was the appropriate remedy under the former practice, but such also as nuisances, the

obstruction of light or air, diverting water courses and other similar wrongs for which the remedy at common law was an action on the case. Of the latter class was permissive waste, which, being a failure to repair, was a mere nonfeasance; and yet it was classed as an injury to real property, and the venue was local. 1 Chitty, pp. 144, 268. That an act which is only threatened may be an injury to real property is shown by the statutory provisions affording a remedy in many cases to prevent it. Thus an injunction is granted 'to restrain the commission or continuance of some act which could produce great or irreparable injury to the plaintiff. Mansf. Dig., § 3730'."

Continuing, the court quoted with approval from *Drinkhouse* v. *Spring Valley Water Company,* 80 Cal. 308, 22 Pac. 252, the following:

"The injury is the same, whether threatened or completed, and the privilege accorded to the plaintiff to prevent the injury by injunction ought not to be held to give him the right to have the trial in a county where the cause would not have been triable if he had waited the completion of the injury before seeking redress."

Counsel for the drainage district claim that this holding was inferentially at least modified by *Hogge* v. *Drainage District No. 7,* 181 Ark. 564, 26 S. W. (2d) 887; where an owner of land in Craighead County was allowed to maintain a suit for permanent injury to his land by the construction of the same drainage district in Poinsett County. It is argued that if the Poinsett Circuit Court had no jurisdiction because the action was local, then the case should have been decided upon that ground because the jurisdiction could not be waived. In the first place, the question of jurisdiction was not raised or discussed in that case at all. In the second place, if the question of jurisdiction had been raised, the court might have held that the courts of Craighead and Poinsett counties had concurrent jurisdiction.

The section of the Digest under consideration was an exact copy of a corresponding section of the Code of

Kentucky in force when our Code was adopted. *Jones, McDowell & Co.* v. *Fletcher,* 42 Ark. 422, which was decided at the November term, 1883, of this court.

In *Smith* v. *Southern Railway Co.,* 136 Ky. 162, 123 S. W. 678, 26 L. R. A. (N. S.) 927, the Court of Appeals of Kentucky, in discussing the question, said:

"While at common law and by § 62, subsec. 4, Ky. Civ. Code Prac., an action for injury to real property is made local, and must therefore, as a general rule, be brought in the county in which the land is situated, and this rule is not to be arbitrarily enforced where the injury to the real estate results from a cause or act arising or occurring in a county or State other than the one in which it is situated, for in such a state of case the law seems to allow the owner of the real estate the right to elect whether he will sue in the county or State where the land lies, or in that in which the act causing the injury was committed.

It is true that this decision was rendered after we adopted the provisions of the Kentucky statute; and under the rule of adopted construction, the decision of the court of last resort of Kentucky would not be binding upon us, yet it would be persuasive as construing a similar statute. Such holding is in application of the rule, "when the matter in one county is depending upon the matter in another county, the plaintiff may choose in which county he shall bring his action." *Barden* v. *Crocker,* 10 Pick. (Mass.) 383. We cite these cases only as holding what might be consistently held by this court on a question of jurisdiction as to an injury sustained which results in one county from an act committed or cause originating in an adjoining county of the same state.

Again, it is insisted that the Cox case above cited is inferentially, at least, overruled or modified by *North Arkansas Highway Improvement District No. 2* v. *Home Telephone Co.,* 176 Ark. 553, 3 S. W. (2d) 307; and *Home Telephone Co.* v. *North Arkansas Highway Improvement*

*District No. 2,* 179 Ark. 875, 19 S. W. (2d) 1014. We do not think so. In these cases, it will be noted from the opinions that the action was treated as a transitory one and not as an action "for an injury to real property." The Highway Improvement District was created by the Legislature of 1917, and § 4 of the act expressly provided that the domicile of the corporation should be in Izard County, and that all suits against it should be by service on the commissioners in that county. Acts of 1917, vol. II, p. 1280. For this reason, it was held that the act itself required service to be had upon the corporation in Izard County; and under the provisions of the Code relating to transitory actions, they must be brought where the defendant resides or is found. Here, as we have already seen, the statute itself makes an action "for an injury to real property," a local action, which must be brought in the county where the land is situated.

We do not consider the case of *Road Improvement District No. 4* v. *Ball,* 170 Ark. 522, 281 S. W. 5, as authority one way or the other. There the court was dealing with a collateral attack on a decree of the Pulaski Chancery Court upon a road improvement district organized under the general statutes in Saline County, and the court merely held that while a suit against a domestic corporation must be brought in the county of its residence, in a transitory action a voluntary appearance in another county than that of its domicile constitutes a waiver and confers jurisdiction upon the court.

Hence it will be seen that, if the proposed acts of Drainage District No. 7 of Poinsett County were to be committed by a railroad corporation, by a private corporation, or by a private person, the venue of the action would be in Cross County where the land is situated and service would be had upon the defendant in Poinsett County, where the act sought to be enjoined was alleged to be committed. But it is insisted that this rule does not apply to a drainage district. We do not agree with counsel in this contention. It is true that drainage districts, levee districts, and road improvement districts

are created by statute, and have only such powers as are expressly or impliedly conferred upon them. They are *quasi* public corporations with power to sue and be sued with reference to the matters conferred upon them. *Altheimer* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 229, 95 S. W. 140; *Board of Directors of St. Francis Levee District* v. *Fleming,* 93 Ark. 490, 125 S. W. 132; and *Board of Levee Inspectors of Chicot County* v. *Southwestern Land & Timber Co.,* 112 Ark. 467, 166 S. W. 589. According to these and numerous other decisions of this court, local improvement districts and their commissioners are governmental agencies created as *quasi* public corporations deriving their powers directly from the Legislature and exercising them as the agent of the property owners in the district whose interests are affected by the duties they perform. They exercise no governmental powers except those expressly or impliedly granted by the Legislature. They are not political or civil divisions of the State like counties and municipal corporations created to aid in the general administration of the government. They are not created for political purposes or for the administration of civil government. Hence no public policy would be violated by applying the same rules for the service of process upon them as are prescribed for private corporations and *quasi* public corporations, such as railroads, etc.

Section 2 of the original act of 1917, creating the district, expressly declares that a certain named board of directors and their successors shall constitute "a corporate body by the name of Drainage District No. 7 of Poinsett County, Arkansas, and by that name they may have a corporate seal, may perform all acts and have all powers and privileges to which a corporation is entitled under the provisions of this act and under the laws of the State of Arkansas and be subject to all liabilities provided for under the provisions of this act and under the laws of the State of Arkansas." Acts of 1917, vol. 1, page 1053.

Thus it will be seen that by the very terms of the act creating the district it is subject to all liabilities provided for under the laws of the State of Arkansas. Hence the venue of actions against it is not changed by the terms of the act creating the district. The act expressly provides that the domicile of the corporation shall be in Poinsett County, and, in addition, that the corporation shall be subject to the liabilities of other corporations under the laws of the State. This would make it amenable to service of process just like other corporations and would make it subject to the venue of actions just like other corporations.

It has been suggested that, being governmental agencies, public improvement districts could not be sued in a county other than that in which it has its domicile by law. The argument is based upon public policy; and the principle involved is that, like counties and cities, if their officers are subject to suits in other counties, such suits must inevitably hinder and delay the successful conduct of the functions laid upon them. If the Legislature had deemed this to be the best public policy, it could have effectually accomplished that purpose by declaring that the drainage district could only be sued in any action in the county of its domicile. That would have made all actions against the corporation local. Instead of this, as we have already seen, the act creating the corporation locates its domicile in Poinsett County, just as private corporations are located by statute in the county where they have their principal office; but, in addition, the statute expressly provides that the corporation shall be subject to all liabilities provided for under the laws of the State. This would include provisions for venue in actions against the district as well as for service of summons upon the district and the commissioners thereof.

This view is upheld by the rule in the case of *Road Improvement District No. 4* v. *Ball*, 170 Ark. 522, 281 S. W. 5, where the court treated the officers of a road improvement district as having power to enter their appear-

ance in another county than that in which the district was organized. If all actions against improvement districts and their officers are to be considered as local and only to be brought and tried in the county where the corporation has its domicile, it is evident that they could not enter their appearance in another county, and that the holding in the Ball case would have been different.

It follows from what we have said that, under the allegations of the complaint, the work proposed to be done under the changed plans and specifications of the drainage district will flood the lands of the plaintiffs in Cross County and permanently injure them. Therefore, under the fourth subdivision of § 1164 of the Digest, the venue is in Cross County, and service of process may be had upon the defendants in Poinsett County, and the application for the writ of prohibition must be denied.