**DRAINAGE DIST. NO. 2 OF CRITTENDEN COUNTY, ARK., et al. v. MERCANTILE-COMMERCE BANK & TRUST CO. OF ST. LOUIS, MO.***

**No. 9778.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 8, 1934.

*Rehearing denied March 12, 1934.

Charles T. Coleman, of Little Rock, Ark. (Walter G. Riddick, of Little Rock., Ark., and Rexford V. Wheeler, of Marion, Ark., on the brief), for appellants.

Fred Armstrong, Jr., of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Arkansas appointing receivers for drainage district No. 2 of Crittenden county, Ark.

The order was made upon the complaint and answer in a suit brought by the appellee, Mercantile-Commerce Bank & Trust Company, against the appellants.

The facts, which are largely undisputed, are substantially as follows: The drainage district was organized under the Arkansas Alternative Drainage System of 1909 (Acts

1909, No. 279, p. 829), as amended in 1911 (Acts 1911, No. 221, p. 193) and 1913 (Acts 1913, No. 177, p. 738). Pursuant to the statutes of Arkansas, the drainage district formulated plans for drainage improvements and duly levied a tax or special assessment upon the lands, public roads, and railroads in the district to meet the principal and interest of bonds issued in October, 1915, dated August 1, 1915, and amounting to $470,000. To secure the payment of the bonds, an instrument was duly executed and recorded by the commissioners of the district pledging the assessments and revenues of the district. The Mercantile Trust Company, the predecessor of appellee, was trustee under said instrument of pledge.

The bonds were serially due at stated dates. Default occurred as to both the principal and the interest of some of the bonds and continued for more than 30 days prior to the filing of the complaint in the present suit, the amount involved being upwards of $50,000.

In 1919, a second issue of bonds was duly made by said drainage district for like purpose, accompanied by a similar pledge instrument and with the same trustee. Default occurred as to the interest on bonds of this second issue and continued for more than 30 days prior to the filing of the complaint in the present suit.

The prayer of the complaint was that judgment be had against the drainage district; that the bonds be established as an obligation of the district; that a receiver be appointed to collect the taxes levied and to foreclose the lien of the taxes and assessments, and for other relief.

In the complaint, section 3633 of Crawford and Moses' Digest is referred to and relied upon as authorizing the appointment of a receiver. The section of the statute is set out in the margin.[1]

Act No. 46, p. 126, of the General Assembly of the state of Arkansas, approved February 18, 1933 (purporting to repeal said section 3633), is also referred to in the complaint; but it is alleged that said act is violative of the Constitution of the state of Arkansas and also of the Constitution of the United States and is void. This act is set out in the margin.[2]

The answer denies that Act No. 46 is void and alleges that by reason of said act, the court had no jurisdiction to appoint receivers, and, further, that the court had no jurisdiction to appoint receivers because the defendant district was a government agency.

We think that the only two main questions presented on the record and requiring discussion are: (1) Whether the order appointing the receivers came within the scope of section 3633 of Crawford and Moses' Di-

[1] **§ 3633. Bonds Secured by Liens—Enforcement.** All bonds issued by commissioners under the terms of this act shall be secured by a lien on all lands, railroads and tramroads in the district, and the board of directors shall see to it that a tax is levied annually, and collected under the provisions of this bill, so long as it may be necessary to pay any bond issued or obligation contracted under its authority; and the making of said assessment or levy and collection may be enforced by mandamus.

"If any bond or interest coupon on any bond issued by said board is not paid within thirty days after its maturity, it shall be the duty of the chancery court of the proper county, on the application of any holder of such bond or interest coupon so overdue, to appoint a receiver to collect the taxes aforesaid; and the proceeds of such taxes and collections shall be applied, after payment of costs, first to overdue interest, and then to payment pro rata of all bonds issued by the said board which are then due and payable; and the said receiver may be directed by suit to foreclose the lien of said taxes on said lands; and the suits, so brought by the receiver, shall be conducted in all matters as suits by the board, as hereinbefore provided, and with like effect; and the decrees and deeds herein shall have the same presumptions in their favor; provided, however, that when all such sums have been paid, the receiver shall be discharged, and the affairs of the district conducted by the board of directors of said district as hereinbefore provided."

[2] "Act 46. **An Act to Regulate the Collection of Improvement District Taxes.**

"Whereas, abuses are prevalent in receiverships of levee, drainage and road districts, in the allowance of excessive fees to counsel for filing suits for receivers, the allowance of excessive fees to receivers, the appointment of unnecessary attorneys for receivers and the allowance of excessive fees to them, all of which imposes an additional financial burden on the landowners of the district, and

"Whereas, the collection officers provided by law can collect improvement district taxes more expeditiously and at less expense than receivers, if they are made to discharge their duties; now, therefore,

"Be It Enacted by the General Assembly of the State of Arkansas:

"Section 1. Hereafter all taxes in levee, drainage and road districts shall be collected at the time and in the manner and by the officers specified in the statutes creating them, or under which they were organized, and the duty to promptly extend and collect such taxes may be enforced by a mandamus, or by a mandatory injunction in equity, at the instance of any landowner in the district, the trustee in any deed of trust securing the bonds of the district, the holder of any bond as to which the district has defaulted in the payment of interest or principal, or any other creditor of the district. The remedies herein provided shall be exclusive, and all laws providing for or authorizing the appointment of a receiver for any such district are hereby repealed, and no court shall appoint a receiver to collect levee, drainage or road district taxes.

"Section 2. As this act is intended to prevent abuses in the administration of justice, to require improvement district officers to perform their legal duties, and to relieve the lands in improvement districts from the payment of unnecessary expenses, an emergency is hereby declared and this act shall take effect and be in force from and after its passage.

"Approved February 18, 1933."

gest; (2) whether the repealing act (Act No. 46 of 1933) as applied to the trust deeds in controversy violated the contract clause of the Constitution of the United States.

By its complaint, plaintiff (appellee) contended that the court was in duty bound to appoint receivers under section 3633 of Crawford & Moses' Digest, and that Act No. 46, p. 126, of 1933 was void.

The order of the court appointing receivers proceeded on the theory of authority granted by section 3633 of Crawford and Moses' Digest; and, further, that Act No. 46 was void as to mortgages and deeds of trust in existence at the date of its passage.

The only assignment of error is that the court erred in holding Act No. 46 of 1933 void and in holding that the court had jurisdiction to appoint receivers.

■ The question whether section 3633 of Crawford and Moses' Digest is itself violative of the Constitution of Arkansas, we do not discuss. It is based upon the ground that there was already an adequate remedy at law, and that, therefore, the Legislature could not vest jurisdiction in the equity courts.

No such question was presented to the trial court, so far as the record shows. Furthermore, the Supreme Court of the state of Arkansas has not held, so far as we are advised, that the section in controversy is violative of the state Constitution, but on the contrary, both that court and this court have repeatedly assumed that the section is valid.

### Scope of section 3633, Crawford & Moses' Digest.

A. This section is contained in Crawford & Moses' Digest, chapter 51, "Drains. II. Alternative System of Drainage Districts." The organization of drainage districts is provided for, and procedure by the drainage districts is set forth in detail. The language of the section is plain and unambiguous. There is no room for differences of construction. In the absence of a decision by the Supreme Court of the state of Arkansas holding that section 3633, Crawford & Moses' Digest, is violative of the state Constitution, we should be very loath so to hold. Moreover, drainage districts in Arkansas have for many years been held by the courts of that state to be subject to equity jurisdiction in the granting of injunctions and other equitable relief. Indian Bayou Drainage District v. Dickie, 177 Ark. 728, 7 S.W.(2d) 794; Hudson v. Simonson, 170 Ark. 243, 279 S. W. 780; Oliver & Oliver v. Western Clay Drainage District

(Ark.) 61 S.W.(2d) 442; Protho v. Williams, 147 Ark. 535, 229 S. W. 38; Drainage District No. 5 v. Kochtitzky, 146 Ark. 495, 226 S. W. 172. Decisions of the federal courts are in accord. Guardian Savings & Trust Co. v. Road Improvement District, 267 U. S. 1, 45 S. Ct. 201, 69 L. Ed. 487; Kochtitzky v. Mercantile Tr. Co., 16 F.(2d) 227 (C. C. A. 8); see, also, Krietmeyer v. Baldwin Drainage District (D. C.) 298 F. 604; Duval Cattle Co. v. Hemphill (C. C. A.) 41 F.(2d) 433.

■ B. The drainage district is not a governmental agency, and, as such, not subject to equity jurisdiction. Guardian Savings & Tr. Co. v. Road Improvement District, supra; Kochtitzky v. Merc. Tr. Co., supra; see, also, Krietmeyer v. Baldwin Drainage District, supra; Duval Cattle Co. v. Hemphill, supra; Drainage District No. 7 of Poinsett County v. Hutchins, 184 Ark. 521, 42 S.W.(2d) 996.

In the case last cited, the court said [page 529 of 184 Ark., 42 S.W.(2d) 996, 1000]:

"It is true that drainage districts, levee districts, and road improvement districts are created by statute, and have only such powers as are expressly or impliedly conferred upon them. They are quasi public corporations with power to sue and be sued with reference to the matters conferred upon them. Altheimer v. Board of Directors of Plum Bayou Levee District, 79 Ark. 229, 95 S. W. 140; Board of Directors of St. Francis Levee District v. Fleming, 93 Ark. 490, 125 S. W. 132, 659, and Board of Levee Inspectors of Chicot County v. Southwestern Land & Timber Co., 112 Ark. 467, 166 S. W. 589. According to these and numerous other decisions of this court, local improvement districts and their commissioners are governmental agencies created as quasi public corporations deriving their powers directly from the Legislature and exercising them as the agent of the property owners in the district whose interests are affected by the duties they perform. They exercise no governmental powers except those expressly or impliedly granted by the Legislature. They are not political or civil divisions of the state like counties and municipal corporations created to aid in the general administration of the government. They are not created for political purposes or for the administration of civil government. Hence no public policy would be violated by applying the same rules for the service of process upon them as are prescribed for private corporations and quasi public corporations, such as railroads," etc.

Our conclusion is that the act of the trial court in appointing receivers in the case at bar was within the scope of section 3633 of Crawford & Moses' Digest.

### Effect of Act No. 46 of 1933.

In its contention that this act is void, appellee relies upon section 10, article I, of the Constitution of the United States, which prohibits any state from passing a law impairing the obligation of contracts. The question arises: Does Act No. 46 come within the prohibition?

It would be a work of supererogation to review all of the decisions, even of the Supreme Court of the United States, upon the question when a law of a state impairs the obligation of a contract. No such necessity confronts us. A few illustrative cases will suffice for present purposes.

In Oshkosh Waterworks Co. v. Oshkosh, 187 U. S. 437, 439, 23 S. Ct. 234, 47 L. Ed. 249, which involved changes in a city charter imposing new conditions and restrictions in suits against a city, the court said:

"It is well settled that while, in a general sense, the laws in force at the time a contract is made enter into its obligation, parties have no vested right in the particular remedies or modes of procedure then existing. It is true the legislature may not withdraw all remedies, and thus, in effect, destroy the contract; nor may it impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract according to the usual course of justice as established when the contract was made. Neither could be done without impairing the obligation of the contract. But it is equally well settled that the legislature may modify or change existing remedies, or prescribe new modes of procedure, without impairing the obligation of contracts, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract."

In Waggoner v. Flack, 188 U. S. 595, 602, 23 S. Ct. 345, 348, 47 L. Ed. 609, which involved a change of remedy given to the state for enforcing land contracts, the court said:

"It is true that the remedy for the enforcement of a contract sometimes enters into the contract itself, but that is where an endeavor has been made to so change the existing remedy that there is no effective and enforceable one left, or the remedy is so far impaired that the party desirous of enforcing the contract is left practically without any efficient means of doing so; but in the case of an alteration of a remedy, if one is left or provided which is fairly sufficient, the obligations of a contract are not impaired, although the remedies existing at the time it was entered into are taken away."

In Antoni v. Greenhow, 107 U. S. 769, 775, 2 S. Ct. 91, 96, 27 L. Ed. 468, which involved a change in the remedy afforded to a bondholder in using coupons in payment of taxes, the court said, quoting from one of its earlier decisions:

"'It is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced, the act is within the prohibition of the constitution, and to that extent void.'"

"In all such cases the question becomes, therefore, one of reasonableness, and of that the legislature is primarily the judge. Jackson v. Lamphire, 3 Pet. 280, 290 [7 L. Ed. 679]; Terry v. Anderson, ubi supra [95 U. S. 628, 24 L. Ed. 365]. We ought never to overrule the decision of the legislative department of the government unless a palpable error has been committed. If a state of facts could exist that would justify the change in a remedy which has been made, we must presume it did exist, and that the law was passed on that account. Munn v. Illinois, 94 U. S. 113, 132 [24 L. Ed. 77]. We have nothing to do with the motives of the legislature, if what they do is within the scope of their powers under the constitution."

In Henley v. Myers, 215 U. S. 373, 384, 30 S. Ct. 148, 152, 54 L. Ed. 240, which involved a change in the statutes relative to transfers of stock by stockholders in corporations, and a change in the statutes relative to enforcing the liability of stockholders for judgments against the corporation, the court said:

"We hold that the defendants acquired their stock subject, necessarily, to the power of the state, having due regard to the legal rights of parties, to regulate the transfer of stocks in its own corporations. * * *

"Equally without merit is the contention that the statute of 1899 impaired the obligations of the stockholder's contract, in that it substituted for individual actions against them a suit in equity by a receiver appointed after judgment against the corporation. In becoming stockholders, the defendants did not acquire a vested right in any particular mode of procedure adopted for the purpose of enforcing their liability as stockholders. It is a well-established doctrine that mere methods of procedure in actions on contract, that do not affect the substantial rights of parties, are always within the control of the state. It is to be assumed that parties make their contracts with reference to the existence of such power in the state."

In the recent case of Gibbes v. Zimmerman, 54 S. Ct. 140, 142, 78 L. Ed. ——, which involved a change in the remedies of depositors in insolvent banks, reliance was placed by depositor Gibbes upon the due process clause of the Fourteenth Amendment, and the court said:

"The appellant says the Act of March 9 arbitrarily deprives him of a remedy for the enforcement of stockholders' liability, which remedy was his property, and was taken from him without due process. But although a vested cause of action is property and is protected from arbitrary interference (Pritchard v. Norton, 106 U. S. 124, 132, 1 S. Ct. 102, 27 L. Ed. 104), the appellant has no property, in the constitutional sense, in any particular form of remedy; all that he is guaranteed by the Fourteenth Amendment is the preservation of his substantial right to redress by some effective procedure. Iowa Central Ry. Co. v. Iowa, 160 U. S. 389, 393, 16 S. Ct. 344, 40 L. Ed. 467; Backus v. Fort St. Union Depot Co., 169 U. S. 557, 571, 8 S. Ct. 445, 42 L. Ed. 853; Crane v. Hahlo, 258 U. S. 142, 147, 42 S. Ct. 214, 66 L. Ed. 514; Hardware Dealers Mut. Fire Ins. Co. v. Glidden Co., 284 U. S. 151, 158, 52 S. Ct. 69, 76 L. Ed. 214.

"Under the Act of March 9, and the regulations, the conservator was endowed with all the functions of a receiver, one of which is the enforcement on behalf of depositors of stockholders' excess liability. If under that act and the regulations power was lacking the defect was cured by the Act of May 16. Nothing is shown to indicate that the conservator will prosecute the claim against the stockholders in a manner different from that to be pursued under the old law by a receiver or that the state courts will refuse him process to that end. The Act of March 9, the regulations, and the Act of May 16, do not purport, and, so far as we can perceive, do not operate, to deny the depositors participation in the distribution of assets, or in the benefit of the stockholders' excess liability. It is not alleged that the proceedings of the conservator will impose upon creditors of the bank greater burden or expense than would have been the case if a receiver were functioning. The substantive rights existing under the old law are preserved. In no proper sense can it be said that any property of the appellant has been taken, injured or destroyed."

In the very recent case of Home Building & Loan Association v. Blaisdell, 54 S. Ct. 231, 78 L. Ed. ——, the question of the impairment of obligation of contracts by state legislation is fully discussed and the conclusions announced in the above cited cases approved.

■ In the case at bar, Act No. 46 did not leave appellee trust company without a remedy. The remedy by way of a receivership, it is true, was abolished; but in its place a remedy by mandamus or by mandatory injunction was expressly given against the officers of the district. The language of the statute is plain and emphatic.

In their answer, defendants, officers of the district, allege their willingness to take any steps toward the collection of the delinquent taxes which the law permits.

We cannot say that the remedies thus afforded by Act No. 46 are either inadequate or would be unavailing. The state Legislature has deliberately adopted them. It is not for us to impugn the good faith of the Legislature.

On the facts disclosed by the record, and in view of the authorities some of which are cited above, we think Act No. 46 is not violative of the contract clause of the Constitution of the United States, even as to mortgages in existence before its passage; and that the remedy by way of a receivership, afforded by section 3633 of Crawford & Moses' Digest, was repealed by said Act No. 46.

Our conclusion is that the order of the District Court appointing receivers should be reversed, but without prejudice to the rights of appellee to renew its application for a receiver if, during the pendency of the present suit, the Supreme Court of Arkansas shall hold Act No. 46 of 1933 null and void.

It is so ordered.