The Honorable Paul Bookout State Representative 2104 Catherine Drive Jonesboro, AR 72404-6963
Dear Representative Bookout:
I am writing in response to your request for my opinion on the following questions:
 1. Does the county judge have the authority to use county labor and equipment to help maintain ditches and improvements in Buffalo Island Drainage District No. 9?
 2. If not, can the drainage district donate the right-of-way to the county and enter into an agreement for its joint use?
You have indicated in your request that the Commissioners of the Buffalo Island Drainage District Number 9 of Craighead County (hereinafter the "District"), comprising approximately 80,000 acres, have determined that a $2.00 per acre service charge would be adequate to maintain planned improvements in the district. The county judge reduced that charge to $1.50 and offered the use of county labor and equipment to maintain the district right-of-way, conditioned upon his establishing that this use of public resources would be authorized.
RESPONSE
In my opinion, the county judge does have the authority to use county labor and equipment to help maintain the District's ditches and improvements. In light of this conclusion, I need not address your second question.
Question 1: Does the county judge have the authority to use county laborand equipment to help maintain ditches and improvements in Buffalo IslandDrainage District No. 9?
The following provisions of the Arkansas Constitution control in reviewing your request:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
Ark. Const. art. 12, § 5; and
 Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.
Ark. Const. art. 16, § 13.
At issue is whether the use of county resources to benefit the residents of a drainage district located within the county is permissible under these constitutional provisions.
The initial question is how to classify a drainage district. It is beyond dispute that an improvement district is not a municipality. Bell v.Fulkerson, 291 Ark. 604, 605, 727 S.W.2d 141 (1987). The Arkansas Supreme Court has further held that drainage and levee districts are not "political or civil divisions of the state like counties and municipal corporations created to aid in the general administration of the government. They are not created for political purposes or for the administration of civil government." Drainage District #1 of PoinsettCounty v. Hutchins, 184 Ark. 521, 530, 42 S.W.2d 996 (1931). See alsoSpelling et al., v. Dewey et al., 122 F.2d (1941); Leuhrmann, et al. v.Drainage District # 7 of Poinsett County, 104 F.2d 696 (1939); DrainageDistrict # 2 v. Commerce Bank Trust Co., 69 F.2d 138 (1934). While a drainage district is thus an entity distinct from the county, the question remains whether it might be considered an agency of the county and, as such, an obviously appropriate recipient of county revenues or services. In Hutchins, the Supreme Court clearly indicated that an improvement district is not an agent of local government:
 [L]ocal improvement districts and their commissioners are governmental agencies created as quasi public corporations deriving their powers directly from the Legislature and exercising them as the agent of the property owners in the district whose interests are affected by the duties they perform. . . . They are not created for political purposes or for the administration of civil government.
184 Ark. at 530 (emphasis added); accord Fitzgerald v. Walker,55 Ark. 148, 17 S.W. 702 (1891) (an improvement district is not a municipality or its agent). Although the highlighted passage characterizes an improvement district as an agency of government, it defines the agency relationship as being not between the district commissioners and a municipal corporation or county, but rather between the commissioners and the district's residents. Any diversion of county funds to this district might consequently be questionable.
However, more recent case law casts doubt on this analysis. In City ofParis v. Street Improvement District No. 12, 206 Ark. 926, 929,175 S.W.2d 199 (1943), which addressed a challenge to the city financing of a street improvement district, the Supreme Court made the following pronouncement:
 Another contention is that the ordinance is void because violative of 5 of art. 12 of the Constitution of 1874, which provides: "No county, city, town . . . shall . . . obtain or appropriate money for, or loan its credit to any corporation, association, institution, or individual." It is argued that the appropriation of money to appellee is a gift and violates said provision; also that the ordinance constitutes a lending of credit to appellee to induce signers on the petition to form the district. We think a street improvement district is not a company, association or corporation within the meaning of 5, art. 12 of the Constitution. A street improvement district is not a private enterprise, or a business corporation or association, but it is rather the municipality acting through an agency of its own creation.
The city of Paris had the power to construct the improvements on the streets in appellee district without resort to the improvement district system, but, instead of doing so, it elected to create the district, with power to assess adjacent property for benefits accruing thereto, and to donate from its street funds annually city-wide aid. The city as a whole was benefited by the improvement. Such a practice is not new or novel and does not violate said provision of the Constitution.
(Emphasis added.) The highlighted language clearly identifies a street improvement district as a municipal agency, prompting the Court to approve the ordinance as constitutional. Likewise, in McCutchen v.Huckabee, 328 Ark. 202, 213, 943 S.W.2d 225 (1997), the Court offered the following as a basis for rejecting a constitutional challenge to an award of city funds to a facilities board:
 [F]acilities boards are not the type of company, association, or corporation contemplated by Article 12, Section 5. Rather, facilities boards are agencies created by the counties to carry out various county activities.
It thus appears that at least certain types of improvement districts can receive county financing on the theory that they are a unique subcategory of "agency" — quasi-governmental entities whose affairs are sufficiently intertwined with those of the county to warrant excluding them from the scope of the constitutional proscription. The case law has not declared whether all improvement districts fall into this category, but logic would suggest that they do. The only basis I can envision for distinguishing a drainage district from those discussed above is that the district you describe apparently serves only a portion of the county. However, the fact is that quorum courts regularly approve spending that benefits only a limited geographical area; indeed, given the nature of county services and proposed overall improvements, it is difficult to imagine how a functional quorum court could consistently avoid doing so. Accordingly, I interpret the Court's remark in City of Paris as meaning no more than that countywide impact is but one more reason for approving the appropriation.
I will further briefly address the possible application of Ark. Const. art. 16, § 13, which creates a cause of action in the people to recover illegal exactions. Article 16 was amended by Ark. Const. amend. 55, § 3, which, inter alia, empowers the county judge to "authorize and approve disbursement of appropriated county funds; operate the system of county roads; [and] . . . have custody of county property." In Pogue v. Cooper,284 Ark. 105, 106-07, 679 S.W.2d 207 (1984), the Supreme Court held that adoption of this amendment did not change the pre-amendment law prohibiting a county judge from leasing out county equipment to private interests or from using county property and employees to perform services for private interests. While acknowledging that the county could lease out its real property, the Court noted that "[p]ersonal property is much more likely to be depleted or destroyed than real property, and thus an illegal exaction is much more likely to occur." Id. at 107. I considerPogue clearly distinguishable from the present case, which involves the use of county equipment and labor not in pursuit of a contract between the county and a private interest, but rather in pursuit of legitimate county interests entrusted to a quasi-governmental agency.
Finally, even if the county's proposed services to the District were classified as an outright gift to a non-agency entity, I believe the county could nevertheless provide the services without violating the constitution. The Supreme Court clearly has not interpreted art. 12 as imposing a blanket proscription against donating public money or services to a non-county entity. Although the Court has become quite stringent in restricting charitable donations, see, e.g., City of Little Rock v.Venhaus, 302 Ark. 204, 788 S.W.2d 478 (1990) (reversing chancellor's charitable distributions of residual funds remaining from an illegal exaction and directing that the funds be returned to be used for "general municipal services"), the Court continues to approve appropriations for quasi-public entities that serve a county or municipal purpose, see,e.g., McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997) (approving appropriation of public money to Pulaski County Civic Center Facility Board). Whether classified as an agency or not, I believe the drainage district constitutes an entity comparable to a facilities board, which the Court in McCutchen described as "not the type of company, association, or corporation contemplated by Article 12, Section 5." 382 Ark. at 213.
Question 2: If not, can the drainage district donate the right-of-way tothe county and enter into an agreement for its joint use?
In light of my response to your first query, I need not address this question.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh