## CITY OF FORT SMITH v. MCKIBBIN.

STATUTE OF LIMITATIONS: *Municipal corporations subject to.*
Municipal corporations are bound as individuals are, by the statute of limitations; and adverse possession of an alley in a city for the statutory period will give title to the occupant and bar the city.

| 41 | 45 |
| 58 | 156 |

| 41 | 45 |
| e73 | 111 |
| e76 | 59 |

| 41 | 45 |
| 84 | 53 |
| f 84 | 520 |

| 41 | 45 |
| d88 | 537 |
| e88 | 541 |

APPEAL from *Sebastian* Circuit Court in Chancery.

Hon. J. F. READ, Special Judge.

*James Brizzolara, Mayor,* for the city.

1. The doctrine of non-user does not apply.

2. The city by virtue of the dedication held the right in and to said alley in trust for the public and the statute of limitation does not apply.

3. The alley is an outlet and means of egress and ingress to and from public streets ; the fee of the same never having been conveyed to the adjoining lot owners, but having been dedicated to public use, and the lots conveyed with reference to the map and dedication to the city for public purposes, the same is a public alley and under the control of the city.

In support of these propositions and others, cites *Vol. 10, No. 17, p. 533, the Reporter ; 3 C. E. Green, 305 ; 4 Id., 46 ; Chapman v. Swan, 65 Barb. ; Burnham v. McQuestion, 48 or 49, N. H.* A city holds its streets and alleys in trust for the public, and the statute of limitations does not run, being a public right held in trust. *Slack v. East St. Louis, 5 Cent. Law, Jour., 328 ; 2 Dill. Mun. Corp. secs. 528 and 529, and n. 2 to sec. 534 ; State v. Franklin Falls Co.,*

*6 Am. Rep. 513; 6 Am. Rep. 649; 20 Am. Rep. 243; 2 Dill. Mun. Corp.*, secs. *516, 517 and 518; 86 Ill., 407; Chicago v. Wright, 69 Ill.; 2 Barb., N. Y., 579.* The statute does not run against public rights. *Reporter, Vol. 7, p. 300; 12 Ill., 38; 86 Ill., 407.*

In case of a public way no length of time of non-user will prevent the public from resuming the right. *2 Greenl. Ev., sec. 665; Quincy v. Jones, 76 Ill., 231.* The alleys of a town are highways. *Wright (Ohio) 749 : 19 Am., sec. 325.*

The closing of a public easement is an indictable nuisance. *24 Ark., 102,* and the right to maintain such nuisance cannot be acquired under the statute of limitation. *49 N. H., 240; Cooley Const. Lim., 367.*

Appellee having no fee in said alley, her possession was merely permissive, not adverse; *3 Bissell, 244; 2 Bissell, 182 and note; 4 Bissell, p. 98 and note.*

The decree perpetually enjoins the city from interfering or opening this alley. This was wrong as the city had a right, if it chose, to condemn it in the manner prescribed by law. *Chicago v. Wright, 69 Ill., High on Inj., sec. 593, p. 392;* and no injunction will be allowed at the suit of one whose only right is based on 20 years adverse user and possession. *Sec., 588, p. 389, 1 High on Inj.*

*Duval & Cravens* for appellee.

The alley was never designed to be used as a public thoroughfare, but only for the use and convenience of the owners of the interior lots.

The statute of limitations runs in cases like this: "Alleys are not public highways and cannot be governed by the same rules. They are for the accommodation of abutting owners, and the public has no general right of way through them. Obstructing the use of an ally is not a public wrong, but if wilful, may cause such injury to an individual as will support an action for a private remedy. *John J. Bagley*

*v. The People, 43 Michigan, 355; Paul v. Detroit, 32 Mich., 110; 2 Dillon on Mun. Corp., p. 603–605,* The right of passage way through an alley, granted for the benefit of abutting lots, is prescribed and lost by non-user for ten years. *Thompson v. Meyers, S. C. La., 15; Chicago Leg. News, 112; Cent. Law Journal, Dec. 25th, 1882.*

EAKIN, J. Mary McKibbin, the owner of a half block of land in Ft. Smith, which she occupied in solido as a residence under enclosures, applied in chancery and obtained a perpetual injunction upon the city authorities, restraining them from proceeding to open an ally through the premises.

The city claimed the alley as having been dedicated to public uses, and as being already subject to its control, and was about to proceed to remove the obstructions. Although the terms of the injunction were general, the decree was not intended, and will not have the effect, to preclude the city from hereafter opening an alley there, in the proper exercise of its powers, as in case of a new alley, if the public convenience should require it.

The city appeals.

The facts of the case are simple. The blocks of the city are 300 feet square, with a street upon every side. They are divided each into 12 lots, fronting, 6 each, upon opposite streets, and running back to a 20 foot alley, which runs between the two ranges of lots. These lots are numbered from 1 to 6 on one side, and reversely from 7 to 12 on the other side. The appellee owned and occupied lots 4, 5, 6, 7, 8, 9, which composed a half of the block, taken across the supposed alley. The other half of the block was owned by two others, having each a quarter of the block on the other corners. They had also taken, each, a portion of the alley into their enclosures, so that there was really no passway there. None of the parties needed or desired one.

The alley, according to the plat of the town, extends straight for a long way, each side, through blocks in the

same range, and was not in any other place obstructed.
The portion of the town, in which the block lies, was not
thickly built; the streets were unobstructed, and it is clear
enough, from the evidence, that there was no public neces-
sity for the alley.  It does not, in any way, appear that it
would have been of the slightest convenience to any one
whatever.  It does appear that to open it would, in a great
measure, destroy the utility and comfort of the premises as
the appellee's home.

The blocks, lots, streets and alleys had been mapped and
platted by the original owner of the site of Ft. Smith, which
plat had been accepted by the city as detrmining the streets
and alleys, and which had been referred to in conveyancing.
All the deeds in a pretty long chain of title, under which
appellee held, described the property by lots, running back
140 feet to an alley.  None of them expressly gave pro-
perty in the alley itself.  So far as these facts constituted
a dedication to the public, the alley had been dedicated, and
had passed under the control of the city authorities.

The enclosures had been there for a long time beyond the
period of limitations, and were there when appellee pur-
chased.    The premises had been used continuously as a
home, with the assent of all co-owners in the block, who
themselves desired that the alley should not be opened.

It appears affirmatively, indeed, that the municipal
authorities did not consider it necessary to the public, for they
had offered to, permit the appellee to maintain her enclos-
ures, for an indefinite time, if she would acknowledge the
city's right, and agree to open the alley at a future time,
when requested.    She refused, and the city was about to
order their removal by the marshal, when she invoked the
aid of the Chancellor.    The city, indeed, desired only to
settle a right, by an effort to exercise it.    Perhaps that was
proper enough, in view of the official trust reposed in the
officers, but nothing would have been lost by leaving the

City of Fort Smith v. McKibbin.

appellee in the enjoyment of her home until the alley should have been needed, if ever. The city's rights were as effectually barred as they could be, by time.

She claims that the action of the city was oppressive, as well as unauthorized. That the alley was never dedicated to the public, and that if it were, the right of the municipality to control it had been lost by limitation.

Municipal Corporations subject to statute limitations.

It is convenient to consider the last question first. It is one of great importance which has been frequently considered in other states, and with regard to which there is much conflict of authority. It may be presented thus: Is a city or town corporation, with respect to property or powers which it holds in trust for the public, bound by the statute of limitations, so as to be precluded, by lapse of time and adverse holding, from claiming to control the property or exercise the power? With regard to property, or contract rights which the municipality claims for its own convenience as a corporation, there is little difficulty. Almost, if not quite, all the authorities concur in holding in such cases that it is amenable to the statute; and we think it obvious that it should be, on principle. *Quoad haec*, it does not represent the sovereignty of the people, but only itself, and the local interests of citizens.

The trouble arises where the powers are held in trust, not for the members of the body corporate alone, but for the whole people who may come to the city. The most common cases are those arising with regard to the use of streets, squares, parks and commons which have been dedicated to the public. Appellees contend that in this respect alleys do not stand upon the same ground with streets and squares; but waiving that for the present, we will consider the question with regard to all.

If municipalities are not bound by statutes of limitations with regard to these public trusts, that is, with regard to their powers to keep open streets, &c., it must be upon the

4—R

maxim that "*nullum tempus occurrit regi,*" and that munici--
palities are the adjutants of government, and have the franchise of sleeping upon their rights ; or, rather, that the public must not suffer from their neglect.

But municipal corporations are not really the State, nor are their functions and powers conferred principally for the benefit of the whole people of the State, although, incidentally, they hold some trusts in the exercise of which any citizen of the State may come to be interested. It may well be doubted whether the reason of the maxim may not be strained too far in applying it to these bodies. That "the time and attention of the sovereign must be supposed to be occupied by the cares of government," might well have excused a king from asserting his rights, but affords no reason why the officers of a corporation should not be reasonably diligent in the discharge of the very duties they were selected to execute. Nor does it afford a reason why citizens, daily sensible of an encroachment on their common rights, should be allowed to lie dormant for many years, and then assert them to the detriment of others. The maxim should not become the instrument of wrong. The more wholesome rule for the citizen individually, and collectively as well, is that the laws favor the vigilant only, and not the careless and slothful.

It has been said, speciously, that municipal authorities can not grant away these public easements, and that no one can therefore claim, "by prescription," to impede them, because a *prescription* implies an original grant. This may be, and is, the true nature of a claim by prescription, but the argument seems to rest on a confusion of ideas. One who sets up the defense of the statute of limitation does not claim technically by prescription, and cannot be met with that technical argument. He defends *by statute* entirely, regardless of any consideration of grant, or even lawful entry. He is allowed to go further, as a conse-

City of Fort Smith v. McKibbin.

quence, and say that as no suit can be brought against him, his possession shall not be disturbed *in pais*, and that he and his assignees shall stand upon the effect of the statute, and be respected as owners.

The authorities upon the vexed question, here presented, have been collected, and the principles discussed by Mr. Dillon in his work on municipal corporations. It is conceived that nothing important can be added to his text, notes and citations, for a full showing of the authorities upon each side and the reasons by which they are supported. See *Dillon on Mun. Corporations, sections 667 to 675, 3d ed.* Whilst he himself comes to the conclusion that no *laches* on the part of the officers of a corporation can defeat the right of the public to its public streets and places, he yet qualifies it by saying that private rights may grow up in consequence of such laches of *"more persuasive force in the particular case than those of the public."* It seems to be a compromise between the doctrine of a statutory bar, and that of *"nullum tempus, &c.,"* by adopting the equitable doctrine of staleness and estoppels *in pais*.

The authorities are reviewed at length in the case of *City of Wheeling v. Campbell et. al., 12 W. Va., 36.* It is a very interesting and instructive case, in support of the doctrine that municipal authorities are bound, as individuals are, by the statute of limitations. There the parties were reversed. The city sought to enjoin the defendants from building a house upon a portion of a street, concerning the original dedication of which there was no question. The defendants set up long and adverse possession, and were met by the doctrine of *nullum tempus*. The authorities on both sides are well arrayed, and the court held upon their decided weight, that the city was subject to the statute and was barred. The court, amongst other things, quoted the remarks of Chief Justice Dillon in the *City of Pella v. Scholte, 24 Iowa, 283*, which was a contest of the right of

the city to a certain garden square claimed by adverse possession. Assuming the dedication, the learned Judge said: "To actions of this character, though brought in equity, the ten years limitation applies directly or by analogy." Further on he says, speaking of the doctrine of *nullum tempus, etc.*: "the principle has not, so far as we know, been extended to municipal or public corporations. On the contrary it has been expressly held, that those corporations *are* within the statute of limitations, the same as natural persons," citing cases in Ohio, Kentucky and New York.

We cannot but admire and commend the independence and integrity of character of the distinguished Jurist, which prompted him, afterwards, in his text book, upon what seemed to him a more enlightened view, to announce a different conclusion. Still we must accord to his utterances, as Judge, of the concurrent opinion of himself and his associates, a greater weight than to his individual views as a text-writer.

Another one of the numerous authorities cited in the City of Wheeling case (*supra*) is that of *Dudley v. Trustees of Frankfort, 12 B. Mon., 610,* a case directly in point with this. It was an injunction to restrain the marshal from removing an enclosure of Dudley off the street, as an obstruction. Dudley claimed by statute of limitations. The court adopted a reasoning which this court approves. Hise, J., delivering the opinion, said. "If the private citizen, at any time, encroach with his buildings and enclosures, upon the public streets, the municipal authorities should, in the exercise of proper vigilance, and of their undoubted authority, interefere by the legal means provided in their charter, to prevent such encroachment, in due time, and thus preserve for public use the squares, streets and alleys of the town, in their original dimensions; but if a private individual or citizen, has been permitted to remain in the continued adverse actual possession of public ground, or of a public

street, as embraced within his enclosure, or covered by his dwelling or other buildings, for a period of twenty years or more without interruption ; such citizen will be vested thereby with the complete title to the ground so actually occupied by him.''

The court in the West Virginia case conceded that the doctrine which exempted municipal corporations from the operation of the statute of limitations, obtained in, and was supported by, the decisions of Pennsylvania, New York, Rhode Island and Louisiana, whilst a contrary doctrine was announced by the highest courts of Vermont, Massachusetts, New York, Connecticut, Maryland, Virginia, North Carolina, South Carolina, Mississippi, Texas, Missouri, Kentucky, Ohio, Illinois and Iowa, all of which, says the court, ''have restricted the application of the maxim to sovereignty alone ; and most of said courts have, in express terms, in cases requiring the decision, held that municipal corporations, like natural persons, are subject to limitation statutes.''

These views commend themselves as reasonable and best adapted to the circumstances of our country, and we adopt the line of decisions in accordance with them.

Affirm the decree.