BLACKBURN *v.* COFFEE.

Opinion delivered March 1, 1920.

1. ADVERSE POSSESSION—RECOGNITION OF ORIGINAL OWNER'S TITLE.—
Where adverse possession of land has vested title, a mere recognition of the possessor's title by the possessor could not revest title already acquired.

2. ADVERSE POSSESSION—TITLE ACQUIRED.—Where adjoining owners by mistake thought that a division fence was the line between them, one who held under claim of ownership up to the fence for more than seven years acquired title by adverse possession.

Appeal from Johnson Circuit Court; *Hugh Basham,* Judge; affirmed.

*Jesse Reynolds* and *G. O. Patterson,* for appellant.

The court erred in directing a verdict for appellee. "Open notorious possession" as applied to adverse holding of land by another means that the claim of ownership must be evidenced by such acts and conduct as are sufficient to put a man of ordinary prudence on notice that the land is held by the claimant as his own. 1 R. C. L. 13. Mere possession is not sufficient. *Ib.;* 52 Am. Dec. 618; 35 Am. St. 613. The fact that all previous owners held to a conditional line even for a long period of time is not inconsistent with a purpose and intent to hold only such, as each was entitled to hold under his deed and to observe the true line when established. The intention with the possession was taken and maintained is controlling as to adverse holding. 1 R. C. L. 49. If, through ignorance, inadvertence or mistake, one occupied up to a given line beyond his actual boundary because he believes it the true boundary line, but has no intention to claim to that extent if it should be ascertained that such line is on his neighbor's land, the indispensable element of adverse possession is wanting. The intention is not absolute but provisional. 1 R. C. L. 50. If the land owner, acting under a mistake as to the true boundary line, incloses land of another believing it his own, encloses it, claims title and holds possession for the statutory period, he becomes the owner, for the posses-

sion and claim of title, though founded on mistake, is adverse, but this would not be so if his intention was to claim only to the true line, but the possession would not be adverse beyond such line. 59 Ark. 628; 1 Cyc. 1037; 80 Ark. 445. The question is solely one for the jury. No intention to hold adversely or in hostility to the rightful owner is shown here on the part of any one connected even remotely with the ownership. 114 Ark. 376; 111 *Id.* 604; 97 *Id.* 47. It was error to take the case from the jury. 71 Ark. 445; 210 U. S. 281; 119 Ark. 589; 120 *Id.* 43-206; 98 *Id.* 334-370; 105 *Id.* 136; 111 *Id.* 309. See also 97 Ark. 438; 76 *Id.* 88; 63 *Id.* 94; 77 *Id.* 556; 103 *Id.* 425; 117 *Id.* 665; 89 *Id.* 368; 100 *Id.* 71; 104 *Id.* 267; 88 *Id.* 550.

*W. E. Atkinson,* for appellee.

1. If J. B. Wilson and J. C. Baskin were adjoining land owners and established a division line, and each took possession, held, fenced and cultivated the land according to said line, the agreement was binding on them and all claiming under them. 23 Ark. 708; 71 *Id.* 248; 75 *Id.* 405.

2. An agreement may be inferred from long acquiescence and occupation according to such line and the parties are bound thereby. 23 Ark. 708; 75 *Id.* 405.

3. If appellee or his grantors, or both, have had continuous adverse possession, cleared, fenced and cultivated the land during the statutory period under the belief that it was included in their deed, then he is entitled to judgment, though the land was not included in the deed. 100 Ark. 71; *Ib.* 555; 53 *Id.* 74; 59 *Id.* 626. If the intention was to hold adversely, the statute runs regardless of the mistake as to boundary or title. 77 Ark. 201; 100 *Id.* 71. The intention governs. *Supra.* See also 104 Ark. 274; 90 *Id.* 178.

4. Efforts to compromise which failed can not be given in evidence, nor can evidence or oral agreement to change the boundary line. 118 *Id.* 10.

5. There was no prejudice in an instruction which assumes as true matters which are established by undisputed evidence. 89 Ark. 178; 95 *Id.* 168. The court properly instructed a verdict, as defendant was clearly entitled to the land, and there is no evidence to the contrary.

HART, J. This is an action in ejectment by F. A. Blackburn against J. G. Coffee to recover ten acres of land. At the conclusion of the evidence the court directed a verdict for Coffee and Blackburn has appealed.

According to the testimony of J. G. Coffee, he is seventy-three years of age and was born and raised on a tract of land which includes the strip in controversy. In about the year 1849, J. G. Wilson entered from the government the eighty acres of land on which Coffee now lives and it included the ten acres in controversy. In 1850 Wilson conveyed by deed to J. C. Baskin a tract of land, and they established what they called a conditional or division line. The deed to Baskin only conveyed thirty acres of the forty acres in which the ten-acre tract in controversy is situated; but the conditional or division line between the parties gave to Baskin the ten-acre tract in controversy. They built a division fence and a ditch, and the fence and ditch have been there ever since. Coffee plowed the land when he was only eight years of age and remembers that the fence was the division line between Wilson and his stepfather, J. C. Baskin. Baskin claimed the ten acres in controversy until the date of his death in 1863. Since that time Coffee and his grantors who obtained title from J. C. Baskin have cultivated up to the division line referred to and claim the land up to that line. Coffee has owned the place where he now lives for thirty-seven years.

J. M. Laster was a witness for the defendant and is seventy-eight years of age. According to his testimony, he first remembered being on the place sixty-five years ago and knew that the present fence was regarded as the line between the parties. They each cultivated up to

the fence. The fence as it was constructed then is at the same place except that Coffee has put in a lane and moved his fence back to that extent. Since he has known the land, each party has cultivated up to the cross fence, and it has been regarded as the line between the two places.

Two other men of about the same age as Laster, who had lived in the neighborhood all their lives, testified to substantially the same state of facts as Laster.

According to the testimony of the plaintiff, Blackburn, he had the land surveyed and found that the deed to Coffee and his grantors did not include the ten acres in controversy. Coffee had told him that his deed only called for thirty acres and that he did not claim any more land in that forty-acre tract. The survey showed that the ten-acre tract in controversy was not included in the thirty acres called for in Coffee's deed. Coffee then recognized that the ten acres in controversy belonged to Blackburn.

Blackburn offered to let Coffee have it for $500 and settle the matter. Coffee agreed to this, but subsequently backed out. Coffee denied having made this agreement with Blackburn.

The circuit court in directing a verdict excluded this testimony of Blackburn and this action of the court is now assigned as error calling for a reversal of the judgment.

The correctness of the ruling of the court in excluding Blackburn's testimony depends upon whether or not Coffee's grantors had already obtained title to the ten acres in controversy by adverse possession. This offer to purchase from Blackburn by Coffee would be to a certain extent a recognition of Blackburn's claim and would have a tendency to show that Coffee's possession was not adverse, if it had occurred before the statutory period had run and the title by adverse possession had been acquired. But if at the time it was made Coffee's grantors had already been in possession of the land for over seven years claiming to hold it adversely and had thereby become vested with the title by limitation, a mere recogni-

tion of Blackburn's title could not revest the title in him when the title had already been acquired by another by adverse possession. This court has expressly held that recognition of another's title after the full statutory period has elapsed will not have that effect. *Shirey* v. *Whitlow*, 80 Ark. 445, and *Hudson* v. *Stillwell*, 80 Ark. 575. Here the undisputed evidence shows that the parties erected a fence and ditch on what they called the conditional or division line. It is evident, when reading the whole testimony, that they used the words, "conditional line and division line," as meaning the same thing. It is true Baskin only got a deed from Wilson to thirty acres in the forty-acre tract in which the ten acres in controversy are situated; but the evidence shows that the parties at the time thought that the division fence was the line between the parties and that the deed to Baskin included the ten acres in controversy. Wilson and Baskin each cultivated the land on his side of the division fence. They regarded it as the line between them. Baskin intended to claim up to the fence. He believed that he owned the ten acres in controversy. It was within his enclosure, and he held it continuously under such claim of ownership until he died in 1863 without any recognition of the possible right of another thereto on account of any mistake in the boundary line. Therefore the holding and possession of Baskin was adverse. It was continued for more than seven years and had the effect to divest the title out of the former owner and invest it in Baskin. *O'Neil* v. *Ross*, 100 Ark. 555, and cases cited.

The testimony not only of Coffee, but of several other old men who had lived in the neighborhood all their lives, shows that when the fence was established in 1850 it was believed to be on the true line. Baskin claimed up to the fence. He claimed to a line visible and known, and his actual possession was coextensive with that boundary. He acquired title by adverse possession, and, under the authorities above cited, it operated as a complete investiture of title, and a subsequent executory agreement with Blackburn to pay him for the ten acres in controversy

would not remove the statute bar and reinvest the title in Blackburn.

It follows that the judgment will be affirmed.