HART *v.* STERNBERG.

4-7081                                      171 S. W. 2d 475

Opinion delivered May 24, 1943.

*D. G. Beauchamp,* for appellant.

*Wils Davis* and *Roy Penix,* for appellee.

ROBINS, J. This suit was instituted in the lower court on March 31, 1942, by appellants, John Hart and Goldie Hart, his wife, for the purpose of quieting their title to the north half of the northwest quarter of section 22, township 14 north, range 2 east, in Craighead county, Arkansas, and to cancel and remove, as a cloud upon appellants' title to this land, a quitclaim deed executed to appellee, H. J. Sternberg, by the Cache River Drainage District on January 5, 1939. Appellee in his answer denied that appellants owned the land, set up title in himself under a quitclaim deed executed to him by the Cache River Drainage District on January 5, 1939, and by way of cross-complaint appellee asked that Hugo Sachs, Jim Fitzgerald and Walter McHaney be made parties so that their respective interests as owners of four purchase-money notes executed by John Hart and Goldie Hart to W. J. Moody in part payment of the purchase money of the tract in dispute might be determined.

The evidence and the agreed statement of facts established that a man named Keyes, sometime prior to 1932, had made application to the state to donate the land, but did not complete the donation; that Keyes sold his claim to the land to J. H. Kitchens in 1931; that Kitchens moved on the land in the summer of 1931 and stayed until 1932; that W. J. Moody bought the land from Kitchens in January, 1932, took possession thereof on February 5, 1932, and remained on the land until he sold it to appellants; that all of the tract was cleared except ten or twelve acres, and nearly all of it was fenced; that Moody obtained from the state of Arkansas a redemption deed dated November 15, 1938, the land having been forfeited to the state for nonpayment of taxes; that Moody sold the land to appellants, John Hart and Goldie Hart, for $600, $100 of which was paid in cash and $500 paid by execution of promissory notes for $100 each, and executed to appellants a warranty deed therefor on November 14, 1938; that Hart immediately took possession of the land by placing a tenant on it and remained in possession of the land until the filing of the suit; that he cleared up some of the land, cultivated a crop on it each year, and collected approxi-

mately $100 yearly rent from it; that the land, being delinquent for drainage taxes for the year 1927, was sold to the Cache River Drainage District through foreclosure proceedings on January 2, 1928, and the district executed its quitclaim deed conveying the land to appellee on January 5, 1939; that the drainage district received a redemption deed from the state of Arkansas dated April 9, 1934, conveying the land in question.

By the decree of the chancery court appellants' complaint was dismissed for want of equity, appellee's title to the land was quieted against appellants, the deed executed by Moody to appellants, John Hart and Goldie Hart, was canceled, the holders of the purchase money notes executed by appellants to Moody were denied a lien on the land, but personal judgments were rendered in their favor against appellants for the amount of these notes. John Hart and Goldie Hart and the holders of these notes have appealed from this decree.

The chancellor based his decree on these findings, which are set forth in the decree: "That W. J. Moody could not claim adverse possession of said tract of land as against the state of Arkansas and could not claim adverse possession as against Cache River Drainage District; that said W. J. Moody and John Hart and Goldie Hart recognized the title of said drainage district to said lands until said district sold and conveyed said lands to defendant, H. J. Sternberg, on January 5, 1939, and John Hart recognized the title of defendant, H. J. Sternberg, to the extent that he is unable to claim seven year's adverse possession of same."

The undisputed testimony shows that appellants, John Hart and Goldie Hart, purchased this land from W. J. Moody on November 14, 1938, for a consideration of $600, and Moody and his wife on the same day executed to appellants, John Hart and Goldie Hart, a warranty deed therefor, and that these appellants immediately took possession of the land and remained in possession thereof up until the filing of this suit on March 31, 1942. It further shows that Moody, appellants' grantor, was in possession of the land when appellants bought it and had

been in possession thereof since February 5, 1932. A considerable part of the land was in cultivation. There was a dwelling house situated thereon in which Moody lived and in which Hart's tenant lived after he purchased it, and most of the land was under fence. Under this situation it must be held that Hart's possession extended to the entire tract. "This court has often held that the actual possession of a part of a tract of land described in a deed gives the grantee possession, constructively, to the whole of the tract as therein described. See *Connerly* v. *Dickinson,* 81 Ark. 258, 99 S. W. 82, and cases there cited." *Wells* v. *Rock Island Improvement Co.,* 110 Ark. 534, 162 S. W. 572.

The possession of appellants, John Hart and Goldie Hart, with that of their predecessor in title, Moody, existed for more than seven years before the commencement of this suit. Their possession was exclusive, notorious, peaceable and adverse, and it effected an investiture of title in these appellants. This court, in the case of *Smart* v. *Murphy,* 200 Ark. 406, 139 S. W. 2d 33, quoted the following statement of the law from 1 American Jurisprudence, p. 793 : "Adverse possession is one of the modes of acquiring title to property. It has been defined as the open and notorious possession and occupation of real property under an evident claim or color of right. It is said to be a possession in opposition to the true title and real owner—a possession which is commenced in wrong and is maintained in right. Again, it has been defined as the ripening of adverse possession into title by lapse of time. A title acquired by adverse possession is a title in fee simple, and is as perfect a title as one by deed from the original owner or by patent or grant from the government."

In the case of *Dail* v. *Etchison, et al.,* 173 Ark. 1180, 291 S. W. 998, it was said: "It is a well-established doctrine of this court that title to lands may be acquired by adverse possession, which title may be asserted as effectively as title acquired by deed. As early as *Jacks* v. *Chaffin,* 34 Ark. 534, we held (quoting syllabus): 'Possession of land during the full period of limitations,

under such circumstances as would make a valid defense, amounts to an investiture of title, which may be actively asserted in all respects, as effectively as if acquired by deed.' See, also, *Logan* v. *Jelks,* 34 Ark. 547; *Wilson* v. *Spring,* 38 Ark. 181; *Crease* v. *Lawrence,* 48 Ark. 312, 3 S. W. 196; *Stricklin* v. *Moore,* 98 Ark. 30, 135 S. W. 360; *Hinton* v. *Martin,* 151 Ark. 343, 236 S. W. 267. In the last case we said, at page 356, 236 S. W. 271: 'We have many times held that our statute of limitations under which title is acquired by adverse possession is not defensive alone, but confers a title which may be enforced by suit'.''

The state conveyed this land by redemption deed to the Cache River Drainage District in 1934, which was eight years before this suit was filed, and the redemption deed executed in 1938 by the state to Moody, appellants' grantor, vested in appellants any claim of the state of Arkansas acquired after 1934, so that there can not be said to be any conflict of interest in this land between the state of Arkansas and appellants. Certainly no such conflict existed after 1934, nor did it exist during a period of more than seven years before the filing of this suit. Therefore, the finding of the lower court that Moody could not claim adverse possession against the state is not responsive to the issues and does not constitute any basis for the decree rendered herein.

This court, in the case of *Western Clay Drainage District* v. *Wynn,* 179 Ark. 988, 18 S. W. 2d 1035, said: ''That such governmental agencies as is the appellant drainage district may lose a right given it by law by limitation or by laches, as settled in the case of *Board of Levee Inspectors of Chicot County* v. *Southwestern Land & Timber Co.,* 112 Ark. 467, 166 S. W. 589. It was there said: 'We have never before decided the question directly whether a levee board, or other governmental agency, is exempt from the application of the doctrine of laches. In *Book* v. *Polk,* 81 Ark. 244, 98 S. W. 1049, the court held that the St. Francis Levee District was estopped by the conduct of its officers; and in *City of Fort Smith* v. *McKibbin,* 41 Ark. 45, 48 Am. Rep. 19, it was held that municipal corporations are bound, the same as indi-

viduals, by the statute of limitations, unless the statute expressly provides otherwise. The well-recognized rule is that the maxim, *nullum tempus occurrit regi,* applies only to the sovereign itself, and not to public corporations or other such governmental agencies to whom powers are delegated. Levee districts are, as we have said in many cases, only governmental agencies, clothed with such powers as are expressly conferred or arise by necessary implication. They are, however, *quasi* corporations, with power to sue and be sued. *Board of Directors St. Francis Levee District* v. *Fleming,* 93 Ark. 490, 125 S. W. 132, 659. If such agencies are barred by the statute of limitations, they are equally barred by delay of enforcement of rights, under circumstances which would invoke against individuals the equitable doctrine of laches.''

In the case of *City of Fort Smith* v. *McKibbin,* 41 Ark. 45, 48 Am. Rep. 19, decided prior to enactment of § 9646 of Pope's Digest, which prevents acquisition of title to any street, alley or park of a city or incorporated town by adverse possession, the court said: ''The authorities are reviewed at length in the case of *City of Wheeling* v. *Campbell, et al.,* 12 W. Va. 36. It is a very interesting and instructive case, in support of the doctrine that municipal authorities are bound, as individuals are, by the statute of limitations. There the parties were reversed. The city sought to enjoin the defendants from building a house upon a portion of a street, concerning the original dedication of which there was no question. The defendants set up long and adverse possession, and were met by the doctrine of *nullum tempus.* The authorities on both sides are well arrayed, and the court held upon their decided weight, that the city was subject to the statute and was barred. The court, amongst other things, quoted the remarks of Chief Justice DILLON in the *City of Pella* v. *Scholte,* 24 Iowa 283, 95 Am. Dec. 729, which was a contest of the right of the city to a certain garden square claimed by adverse possession. Assuming the dedication, the learned judge said: 'To actions of this character, though brought in equity, the ten years limitation applies directly or by analogy.' Further on,

he says, speaking of the doctrine of *nullum tempus,* etc.: 'the principle has not, so far as we know, been extended to municipal or public corporations. On the contrary it has been expressly held, that those corporations *are* within the statute of limitations, the same as natural persons,' citing cases in Ohio, Kentucky and New York.''

We have not been referred to any decision of this court wherein it is held that limitation may not be pleaded against a governmental agency, such as an improvement district, and we are not willing to overrule the many decisions of this court to the contrary.

The finding of the chancery court that W. J. Moody and John Hart and Goldie Hart recognized the title of the drainage district, and that after appellee, Sternberg, acquired the land they recognized the title of Sternberg is not supported by the testimony. The record shows that these appellants simply made inquiry about the drainage taxes which, of course, constituted a lien upon the land, and which they naturally would be interested in discharging, and that any negotiations had by them with appellee, Sternberg, after he purchased the land from the drainage district amounted, at the most, only to an effort on their part to buy their peace from Sternberg when they learned that he was claiming title. Furthermore, all such negotiations occurred after appellants and their grantors had been in the adverse possession of this land for more than seven years and did not amount to such a recognition of appellee's title as to revest in appellee the title which they had acquired by adverse possession.

Justice RIDDICK, speaking for the court, in the case of *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444, said: ''This continuous possession for the statutory period, if adverse, divested plaintiff and his grantor of the title, and gave it to defendant, and the mere fact that defendant afterwards in conversation with plaintiff recognized the justness of his claim to the land did not divest the title from defendant or estop him from asserting such title. If one, before the statutory period has run, and before he has acquired title by adverse possession, ac-

knowledges or recognizes the title of the owner, such recognition will show that his possession is not adverse, and the statute of limitations will not commence to run against the owner until the adverse claimant repudiates the title of the owner. But recognition after the full statutory period has elapsed will not have that effect; for where title by limitation has become vested in the adverse claimant, a mere recognition of some other title does not revest the title acquired by adverse possession. *Bradford* v. *Guthrie,* 4 Brewst. (Pa.) 351.''

To the same effect was the holding in the case of *Blackburn* v. *Coffee,* 142 Ark. 426, 218 S. W. 836, in which the court said: ''This offer to purchase from Blackburn by Coffee would be to a certain extent a recognition of Blackburn's claim and would have a tendency to show that Coffee's possession was not adverse, if it had occurred before the statutory period had run and the title by adverse possession had been acquired. But if at the time it was made Coffee's grantors had already been in possession of the land for over seven years claiming to hold it adversely and had thereby become vested with the title by limitation, a mere recognition of Blackburn's title could not revest the title in him when the title had already been acquired by another by adverse possession. This court has expressly held that recognition of another's title after the full statutory period has elapsed will not have that effect. *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444, and *Hudson* v. *Stillwell,* 80 Ark. 575, 98 S. W. 356.''

In the case of *Mustain* v. *Smith,* 187 Ark. 1163, 63 S. W. 2d 537, it was said: ''Where the land has been held by adverse possession for the statutory period, it operates as a complete investiture of title, and even if a subsequent executory agreement . . . to readjust the boundary lines had been made, or any other act done in recognition of the validity of some other party's claim to the lands, it would not remove the statutory bar and reinvest the title. Section 6942, Crawford & Moses' Digest; *Smith* v. *Leech, et al.,* 184 Ark. 421, 42 S. W. 2d 545; *Stroud* v. *Snow,* 186 Ark. 550, 54 S. W. 2d 693, and 17 R. C. L., p. 671.''

It follows from what has been said that the chancery court erred in not holding that appellants, John Hart and Goldie Hart, had acquired title by adverse possession. The decree of the lower court is accordingly reversed and this cause is remanded with directions to set aside the decree rendered herein, to quiet the title to the above described tract in appellants, John Hart and Goldie Hart, to declare a lien in favor of appellee, H. J. Sternberg, on said land for the amount of any state and county and drainage district taxes paid by him thereon, as well as for the amount actually paid by him to the drainage district for said land, which in equity should be treated as a payment of drainage taxes by appellee, with interest thereon at the rate of six per cent. per annum from date of payment of these respective items, and to declare a lien, subject to the lien in favor of appellee, Sternberg, in favor of appellants, Hugo Sachs, Jim Fitzgerald and Walter McHaney, for any balance due to them from appellants, John Hart and Goldie Hart, on the notes executed for the purchase money of this land; and all costs in this and the lower court to be adjudged against the appellee.

McHANEY, J., disqualified and not participating.