JAEDECKE *v.* RUMMELL.

4-7363                                          180 S. W. 2d 842

Opinion delivered May 15, 1944.

287

*E. L. Carter* and *W. A. Leach*, for appellant.

*Tom J. Terral* and *Chas. B. Thweatt*, for appellee.

ROBINS, J. The State of Arkansas, on January 26, 1938, proceeding under Act No. 119 of the General Assembly of Arkansas, approved March 19, 1935, brought suit in the lower court to confirm its title, arising from forfeiture for nonpayment of taxes, to the northeast quarter of the southeast quarter of section 21, township 1 south, range 12, west, and other lands in Pulaski county, Arkansas. Decree of confirmation as prayed was rendered by the court on November 10, 1942.

On July 19, 1943, appellant, Percy Jaedecke, filed an intervention in the confirmation suit, alleging that he was the owner of said tract, and that the sale of the land to the state for nonpayment of taxes was void on account of lack of proper notice of said sale and failure of the collector to file the delinquent list with the clerk within the time fixed by law, and appellant prayed that appellee, William Rummell, who was said to claim some interest in the land, be made a party, and that the sale of the land to the state for nonpayment of taxes be declared void and the title to the land be quieted in appellant.

Summons issued on appellant's intervention was served on appellee and he filed answer alleging that the land forfeited to the state for nonpayment of taxes of

1934; that the state sold and conveyed the land to Jack Scruggs on August 8, 1938; that Jack Scruggs sold and conveyed the land to appellee, and that appellee and his predecessor in title had been in actual possession of said land for more than two years, claiming same under said deed from the state; and appellee alleged that all right of appellant as to the land was barred by the statute of limitations of two years under the provisions of § 8925 of Pope's Digest of the laws of Arkansas.

The cause was tried in the lower court on an agreed statement of facts in which it was stipulated that appellant, a resident of Wisconsin, acquired the land in 1925, and paid taxes thereon for that and subsequent years up to and including 1933, but that the taxes for 1934 not being paid the land was forfeited and sold to the state on November 4, 1935; that the collector did not, in the time required by law, file the list of lands delinquent for taxes of 1934 with the clerk and that the clerk failed to publish notice of the sale as required by law; that the state brought suit to confirm its title on January 26, 1938, and decree confirming the state's title was entered on November 10, 1942; that on August 8, 1938, during the pendency of the confirmation proceeding, the State Land Commissioner sold and conveyed the land to Jack Scruggs, who soon thereafter took actual possession of it, built a building thereon, and occupied the land until September 5, 1939, when he sold it to appellee, who immediately took possession of the land and built a home thereon; that appellee has, since September 5, 1939, occupied and farmed the land, completing his payments to Scruggs and obtaining Scruggs' deed for the land on July 20, 1942; that Scruggs paid the taxes on the land for 1938, and appellee had paid them for the years 1939 to 1942, inclusive; that when appellant filed his intervention he paid over to the clerk $78.67, which lacked $1.09 of being equal to the amount of the taxes, penalty and costs for which the land sold, plus taxes that would have accrued had the land remained on the tax books at the same valuation, and at the hearing of the case intervenor deposited the additional sum of $1.09 with the clerk.

The chancery court found the issues in favor of appellee and entered decree dismissing appellant's intervention for want of equity.

For reversal of the lower court's decree appellant urges: (1) that the state could not sell the land during the pendency of the confirmation suit; (2) that the effect of § 6 and § 9 of Act 119 of 1935 was to give appellant new and additional right to redeem his land from the forfeiture up and until the expiration of one year from the date of the confirmation decree provided for by this act; and (3) that appellee was not entitled to the benefit of the two-year statute of limitations provided by § 8925 of Pope's Digest.

## I.

To sustain his contention that the state's sale of the land to appellee was void because it was made during the pendency of the confirmation suit, appellant relies on the decision of this court in the case of *St. Louis Refrigerator & Wooden Gutter Company* v. *Langley*, 66 Ark. 48, 51 S. W. 68. In that case it was held by a divided court that the state could not, after the filing of an "overdue tax" suit, dispose of lands included in such suit until the termination thereof.

The "overdue tax" suit involved in that case was brought under the authority of Act No. 39 of the General Assembly of Arkansas, approved March 12, 1881, entitled "An Act to Enforce the Payment of Overdue Taxes." This act authorized the institution of a suit in equity by any citizen, who might give security for costs, not only to enforce the lien of the state on any lands on which taxes assessed had not been paid, but also to compel the assessment and foreclose the tax lien on lands which had not been assessed. The act directed that, where any of the lands mentioned in the complaint had been sold to the state for nonpayment of taxes, that fact should be set up in the complaint and a summons issued against the state auditor, commanding him to appear and show cause why the sale to the state should not be declared void and the land taxed as if no such forfeiture had oc-

curred; and it was provided that in such case the court should inquire whether the sale to the state was void, and if it was found to be void the court should proceed to enforce the lien against the land as if no sale to the state had occurred. By § 11 of the act, the owner of any lands sold under the "overdue tax" proceeding was given the right to redeem same within two years after the sale, whether the land was sold to the state or to an. individual.

The difference between the proceeding authorized by the Act of 1881 providing for the "overdue tax" suits and the proceeding authorized by Act 119 of 1935 providing for a suit to confirm the state's title is apparent. The first was a proceeding which might be instituted by a citizen to foreclose the tax lien against lands on which taxes had been assessed but not paid, and against lands which had escaped assessment. The latter proceeding is a suit to be instituted by the state in order to quiet and confirm its title to lands already sold to it for nonpayment of taxes. The two acts are utterly dissimilar in purpose and in method of execution.

Furthermore, in its opinion in that case, the court expressly stated that "There is nothing in the record, either in the pleadings or proof, that would justify us in passing upon the question of limitations, either of two or seven years." So it clearly appears that the court in the cited case reserved from its decision the question of the rights of one depending on the two-year statute of limitation. In the case at bar the defense of appellee was based on his plea of limitation, under § 8925 of Pope's Digest. The decision in the case of *St. Louis Refrigerator & Wooden Gutter Company* v. *Langley, supra,* does not control here.

There is nothing in the act providing for the confirmation suit under review in this case that deprives the state land commissioner of the right to sell lands of the state which have been included in a confirmation suit during the pendency thereof. These confirmation suits frequently remain on the docket of the chancery courts for many years. In the instant case the complaint was

filed on January 26, 1938, and the decree was not rendered until November 10, 1942. The legislature did not intend that by the filing of the confirmation suit the power. of the state to dispose of the lands embraced therein was suspended until the termination of the suit. This would place it within the power of the attorneys representing the state and the lower courts to delay indefinitely the alienation by the state of these forfeited lands, thereby preventing the state from collecting revenue therefrom, and preventing the acquisition of these lands by citizens who might cultivate, improve and make good use of them. Certainly there is no express language in the act justifying such a construction nor can any such interpretation be reasonably implied. This court has frequently sustained the title of an owner who had purchased from the state, pending a confirmation proceeding, land included in such suit. *Bluford* v. *Parsons,* 194 Ark. 253, 106 S. W. 2d 578; *Beloate* v. *Taylor,* 202 Ark. 229, 150 S. W. 2d 730; *Farrell* v. *Sanders,* 204 Ark. 1068, 166 S. W. 2d 889; *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475.

## II.

Appellant bases his argument that he had the absolute right to redeem his land upon the following §§ of Act 119 of 1935:

"Section 6. Any person, firm, corporation, or improvement district claiming any interest in any tract or parcel of land adverse to the state shall have the right to be made a party to the suit, and, if made a party, the claims of any such person, firm, corporation, or improvement district shall be adjudicated. If any person, firm, corporation or improvement district sets up the defense that the sale to the state was void for any cause, such person, firm, corporation or improvement district shall tender to the clerk of the court the amount of taxes, penalty and costs for which the land was forfeited to the state, plus the amount which would have accrued as taxes thereon had the land remained on the tax books at the valuation at which it was assessed immediately prior to the forfeiture; provided, that there shall be credited on

the amount due, any taxes that may have been paid on the land after it was forfeited to the state. In case any person, firm, corporation or improvement district so made a party defendant to the proceeding as hereinabove provided shall establish a valid defense, a decree of the court shall be rendered in favor of such defendant, with respect to the tract so affected and shall quiet the title thereto in such defendant, free from any claim of the state therein, upon payment by said defendant of the total amount of taxes, penalty and costs as hereinabove mentioned.''

''Section 9. The decree of the chancery court confirming the sale to the state of such real property, as aforesaid, shall operate as a complete bar against any and all persons, firms, corporations, *quasi*-corporations, associations, and trustees who may thereafter claim said property except as hereinafter provided; and the title to said property shall be considered as confirmed and complete in the state forever; saving, however, to infants, persons of unsound mind, imprisoned beyond the seas, or out of the jurisdiction of the United States, the right to appear and contest the state's title to said land within one year after the disabilities are removed. The owner of any lands embraced in the decree may, within one year from its rendition, have the same set aside insofar as it relates to the land of the petitioner by filing a verified motion in the chancery court that such person had no knowledge of the pendency of the suit, and setting up a meritorious defense to the complaint upon which the decree was rendered. The chancellor shall hear such defense according to the provisions of this act as though it had been presented at the term in which it was originally set for trial.''

It will be noted that nowhere in the two quoted sections of the act, which are solely relied on by appellant, is the word ''redeem,'' or any word of similar meaning, used. The right therein extended to the landowner is not a right to redeem his land, but a right to show that it was improperly sold for taxes, and, as a prerequisite to the exercise of this right, the landowner is required to de-

posit with the clerk the amount due for taxes, penalty, and costs. Under a strict definition of the terms, a right to redeem from a tax sale is essentially different from a right to contest a tax sale. The right of redemption is an act of grace extended by the sovereign and it exists not only as to void but also as to valid sales; while a right to make a defense against such a sale can be appropriately exercised only when the sale is void. In the case of *Sparks* v. *Farris,* 71 Ark. 117, 71 S. W. 255, 945, Chief Justice BUNN, speaking for the court, said: "Nor can one consistently petition to be allowed to redeem, and at the same time call in question the tax title of the purchaser; for, in the very nature of things, one who applies to redeem must admit the regularity of the forfeiture and tax sale, or at least must waive any right to call the same in question, . . ." We conclude that the act (Act 119 of 1935) does not create any such a new right of redemption as would enable appellant to effect a redemption of the land here involved.

### III.

It is finally urged by appellant that, since this is a proceeding on the part of appellant to *redeem,* rather than a possessory action for the land, appellee may not plead the two-year statute of limitations (provided by § 8925 of Pope's Digest) in bar of appellant's right.

In his intervention appellant alleged the invalidity of the sale of his land for taxes and asked that the tax sale be held invalid and vacated. These allegations were sufficient to stamp the proceeding thenceforth a contest of the validity of the tax sale. The statute relied on did not give appellant any right to *redeem* in addition to that conferred by the general law, and there is nothing in the language of the act (Act 119 of 1935) authorizing the filing of the confirmation suit by the state that indicates that the legislature intended that the provisions of § 8925 of Pope's Digest should be inoperative as to lands that might be included in such suit and disposed of by the state after the filing of the confirmation suit. To give the act the construction contended for by appellant would violate the spirit and intention of the act, which

was to provide a method of strengthening and validating the title of the state and its grantees as to lands forfeited for nonpayment of taxes and not to extend a new right of redemption, capable of being exercised over an indefinite length of time, by the landowner who had neglected to pay his taxes.

The agreed statement of facts shows that appellee and his predecessor in title had been in the actual possession of this land for more than four years before appellant instituted the proceeding here involved. Although appellant had the title to the land he paid no taxes thereon after 1934 and did no act evidencing any claim of ownership during a period of nine years thereafter. Before appellant filed his intervention in 1943 the actual occupancy by appellee and his grantor, under the deed from the state, for a period of almost five years, had vested a good title in appellee, as against any claim of ownership on the part of appellant. *Carpenter* v. *Smith,* 76 Ark. 447, 88 S. W. 976; *Ross* v. *Royal,* 77 Ark. 324, 91 S. W. 178; *Dickinson* v. *Hardie,* 79 Ark. 364, 96 S. W. 355; *Bradbury* v. *Dumond,* 80 Ark. 82, 96 S. W. 390, 11 L. R. A. N. S. 772; *Chavis* v. *Henry,* 205 Ark. 163, 168 S. W. 2d 610; *Terry* v. *Drainage District No. 6, Miller County,* 206 Ark. 940, 178 S. W. 2d 857; *Sims* v. *Petree,* 206 Ark. 1023, 178 S. W. 2d 1016.

The decree of the lower court is accordingly affirmed.