# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2498
_____

Northwest Arkansas Conservation Authority,

*Plaintiff - Appellant,*

v.

Crossland Heavy Contractors, Inc.; Fidelity & Deposit Company of Maryland,

*Defendants - Appellees.*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: April 12, 2022
Filed: August 30, 2022
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

The Northwest Arkansas Conservation Authority is a public corporation created to handle wastewater treatment for municipalities in northwest Arkansas. After a series of pipeline failures, the Authority sued the pipeline contractor and its surety, alleging deficient construction. The Authority sued outside the time periods specified in the relevant statutes of limitations and repose, but asserted that the time

did not run against its claims, because the Authority was suing as a public entity seeking to vindicate public rights. The district court[*] concluded that the rights the Authority sought to enforce were merely proprietary, and that its claims were therefore time-barred. We affirm.

## I.

A group of municipalities formed the Northwest Arkansas Conservation Authority "to address the treatment and disposal of bio-solids" in Benton and Washington Counties. The municipalities formed the Authority pursuant to Arkansas's Joint County and Municipal Solid Waste Disposal Act, Ark. Code Ann. § 14-233-101 *et seq.* This Act permits two or more municipalities to pool their resources and create a shared sanitation authority. *Id.* § 14-233-104(a)(1). The Act then vests the newly created authority with corporate personhood, *see id.* § 14-233-107, and empowers it "to own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise deal in or dispose of" public sanitation projects. *Id.* § 14-233-104(b)(1).

In 2007, the Authority contracted with an engineering firm to design and oversee the construction of roughly 47,000 linear feet of sewer pipeline. After receiving bids, the Authority awarded the construction contract to Crossland Heavy Contractors, Inc. Fidelity & Deposit Company of Maryland issued a performance bond for the project. Crossland completed construction of the project in June 2010.

Between early 2016 and mid-2020, the pipeline suffered repeated failures. These failures caused sewage overflows onto neighboring property. An inspection in 2018 revealed that ninety-six percent of the pipeline's sections had deviations in

---

[*]The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

diameter greater than the acceptable five percent. A consultant retained by the Authority issued a report attributing the failures to Crossland's inadequate bedding of the pipe.

The Authority sued Crossland and Fidelity in Arkansas state court in January 2020, nine-and-a-half years after the completion of the pipeline. As relevant here, the Authority asserted claims for breach of contract, negligence, breach of express and implied warranties, and products liability against Crossland. The complaint also asserted a claim for breach of contract against Fidelity. The defendants later removed the case to federal court.

Crossland and Fidelity moved to dismiss the complaint. Crossland asserted that the Authority's claims against it were defeated by the five-year statute of repose for actions predicated on construction contracts. *See* Ark. Code Ann. § 16-56-112(a). Fidelity similarly asserted that the Authority's breach-of-contract claim was barred by the six-month statute of limitations for actions on bonds. *See id.* § 18-44-508(b) (2020). The Authority responded that the common-law doctrine of *nullum tempus occurrit regi*—"time does not run against the king"—meant that the statutes of limitations and repose did not run against its claims.

The district court granted the motions to dismiss in relevant part. The court reasoned that the Authority could not invoke *nullum tempus*, as its claims sought to enforce the Authority's proprietary rights, rather than rights "in which the public in general has an interest." Without the benefit of *nullum tempus*, the statutes of limitations and repose had run against the Authority's claims. We review the district court's decision *de novo*, accepting as true the factual allegations in the complaint. We apply the substantive law of Arkansas. *EMC Ins. Cos. v. Entergy Ark., Inc.*, 924 F.3d 483, 485 (8th Cir. 2019). Where there is no Arkansas Supreme Court case on point, we predict how that court would rule if it were to confront the same issue. *Id.*

II.

The doctrine of *nullum tempus occurrit regi* provides that the sovereign is exempt from the running of statutes of limitations unless the statute in question expressly provides otherwise. *Nullum tempus* has its roots in early English law. As Blackstone explained it, the law presumed "that the king is always busied for the public good, and therefore has not leisure to assert his right within the times limited to subjects." 1 William Blackstone, *Commentaries* *247. Upon achieving their independence, the former American colonies assumed the same prerogative. *United States v. Thompson*, 98 U.S. 486, 489-90 (1878). Many States, including Arkansas, have since opted to maintain the doctrine as a matter of public policy. These States justified the doctrine based on the need to protect public rights and property against losses caused by dilatory public servants. *Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 132-33 (1938); *Hill v. State*, 23 Ark. 604, 610 (1861).

Although the Arkansas Supreme Court has long recognized *nullum tempus*, that court has cabined the doctrine's potential beneficiaries. The court has often said that *nullum tempus* applies "only to the sovereign itself, and not to public corporations or other such governmental agencies to whom powers are delegated." *E.g.*, *Hart v. Sternberg*, 171 S.W.2d 475, 478 (Ark. 1943) (internal quotation omitted). The task of governing the entire sovereignty "might well have excused a king from asserting his rights," but it afforded "no reason" why the officers of a subordinate public entity should not be expected to "be reasonably diligent in the discharge of the very duties they were selected to execute." *City of Ft. Smith v. McKibbin*, 41 Ark. 45, 49-50 (1883).

The Authority asserts, however, that it falls within an exception to this general rule. In *Jensen v. Fordyce Bath House*, 190 S.W.2d 977 (Ark. 1945), the Arkansas Supreme Court reiterated that *nullum tempus* is generally "an attribute of sovereignty only, and cannot be invoked by counties or other subdivisions of the state." *Id.* at 979

(internal quotation omitted). But after taking stock of the development of *nullum tempus* in other jurisdictions, the court expanded the doctrine to encompass subordinate public entities in certain circumstances. The court explained that a county official could invoke *nullum tempus* if he was seeking to enforce a right "belonging to the public and pertaining purely to governmental affairs, and in respect to which [the county] represents the public at large or the state." *Id.* (internal quotation omitted). The court distinguished suits to enforce public rights from suits to enforce contract rights or other rights belonging to the entity "in a proprietary sense." *Id.* (internal quotation omitted). The court concluded that the plaintiff in *Jensen*, a county tax collector seeking to recover delinquent state taxes, could invoke *nullum tempus*, because he was seeking to enforce a "sovereign right of the state." *Id.* at 978-81.

The Arkansas case law interpreting this exception is limited, but some insights may be gleaned from looking to the treatment of *nullum tempus* in other jurisdictions. Some jurisdictions have abolished *nullum tempus* altogether. *E.g.*, *Shootman v. Dep't of Transp.*, 926 P.2d 1200, 1207 (Colo. 1996). Others have preserved the doctrine, but declined to extend it to public entities other than the State itself. *E.g.*, *Bd. of Sch. Comm'rs of Mobile Cnty. v. Architects Grp., Inc.*, 752 So.2d 489, 491-92 (Ala. 1999). Still others, like Arkansas, have extended *nullum tempus* to subordinate public entities in certain situations. Of these jurisdictions, most determine whether a subordinate entity can invoke the doctrine by drawing some sort of public-proprietary distinction. *See* 54 C.J.S. *Limitations of Actions* § 45 (2022) (citing cases).

Yet even in the latter jurisdictions, courts differ in how they decide whether *nullum tempus* applies. One group asks whether the public entity's suit stems from the entity's performance of a public *function*. *See, e.g.*, *Town of Littleton v. Layne Heavy Civil, Inc.*, 819 S.E.2d 101, 103-04 (N.C. Ct. App. 2018). These courts use various tests to determine whether the function at issue is public or proprietary. A court may consider, for example, whether the function "is one in which only a

-5-

governmental agency could engage," *id.* (internal quotation omitted), whether the function benefits the State as a whole or just local citizens, *Hamilton Cnty. Bd. of Educ. v. Asbestospray Corp.*, 909 S.W.2d 783, 785 (Tenn. 1995), or whether the function is traceable to a sovereign power delegated by the State. *Wash. Pub. Power Supply Sys. v. Gen. Elec. Co.*, 778 P.2d 1047, 1049 (Wash. 1989).

Other courts focus on the *rights* sought to be enforced through the public entity's lawsuit. Some rights-focused courts have looked broadly to the subject matter underlying the lawsuit. The Oklahoma Supreme Court, for example, concluded that a municipal improvement authority was seeking to enforce the public's right to an "adequate water supply" when it sued a group of contractors for the negligent construction of a water main. *Okla. City Mun. Improvement Auth. v. HTB, Inc.*, 769 P.2d 131, 132-36 (Okla. 1988). Others have taken a more circumscribed view and focused on the nature of the entity's cause of action. *See, e.g.*, *City of Rochester v. Marcel A. Payeur, Inc.*, 152 A.3d 878, 882-83 (N.H. 2016); *cf. Baltimore County v. RTKL Assocs., Inc.*, 846 A.2d 433, 444 (Md. 2004) (preserving the public-function test generally, but declining to "impose that mish-mash regime on contract actions"). On this view, *nullum tempus* does not apply to actions that sound in contract or tort, at least insofar as the rights at issue arise from the public entity's voluntary arrangements. *See City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 119-20 (3d Cir. 1993) (applying Pennsylvania law); *Okla. City Mun. Improvement Auth.*, 769 P.2d at 142 & n.32 (Opala, J., dissenting). These claims accrue to a public entity in the same manner as a private party, *City of Philadelphia*, 994 F.2d at 120, and unlike Blackstone's "continually busied" sovereign, a subordinate entity is well-equipped to "vigilantly enforce" its rights. *City of Rochester*, 152 A.3d at 882.

Against this backdrop, the Authority first urges that *nullum tempus* applies because the construction and maintenance of sewer pipelines are governmental functions. Even were we inclined to agree about the nature of these functions, we

think the Arkansas Supreme Court's decisions are more consistent with the public-rights approach than with its public-function counterpart. In *Jensen*, the court explained that it was "well settled" that statutes of limitations would apply against public entities "where the enforcement of mere private or proprietary rights are involved." 190 S.W.2d at 979. It was only where the entity was "seeking to enforce a right in which the public in general has an interest" that it would be exempted from the statute of limitations. *Id.* (internal quotation omitted). In the Arkansas court's most recent word on the subject, it emphasized again that an entity may invoke *nullum tempus* where "the 'rights' at issue belong to the public." *Ark. Dept. of Env't Quality v. Brighton Corp.*, 102 S.W.3d 458, 469 (Ark. 2003). Whether or not the Authority was engaged in a public function when it contracted with Crossland to construct the pipeline, we think the appropriate question is whether the rights it is now seeking to enforce are public rights.

The Authority argues that this public-rights approach is inconsistent with principles of municipal immunity. In Arkansas, a municipal corporation was historically entitled to immunity from tort suits for actions taken while it was engaged in a public function. *See Kirksey v. City of Fort Smith*, 300 S.W.2d 257, 259 (Ark. 1957). The Authority points out that the Arkansas Supreme Court has held that cities operating waterworks and sewer systems were performing public functions. *Id.* at 259-60. It asserts that *nullum tempus* is best understood as the sword accompanying immunity's shield, and that it would be illogical to interpret one doctrine more narrowly than the other.

We find this plea for symmetry unpersuasive. The Arkansas Supreme Court abolished common-law municipal immunity in 1968. *Parish v. Pitts*, 429 S.W.2d 45, 51 (Ark. 1968). The state legislature responded by enshrining the immunity in statute, *see* Ark. Code Ann. § 21-9-301, but in so doing, the legislature severed municipal immunity from its common-law roots. The statute did away with the public-proprietary distinction of the common law and replaced it with a blanket

-7-

immunity (insofar as the entity is not covered by liability insurance). *Augustine v. City of West Memphis*, 662 S.W.2d 813, 814 (Ark. 1984); *see White v. City of Newport*, 933 S.W.2d 800, 801-03 (Ark. 1996). If, as the Authority supposes, municipal immunity and *nullum tempus* are still best understood as two sides of the same coin, there would be no reason for *nullum tempus* to adopt a public-proprietary distinction that has been abandoned for municipal immunity.

Even if we consider the two doctrines as they appeared in the common law, the Arkansas Supreme Court did not treat them as coterminous. Before 1945, a municipal corporation was entitled to immunity if it was engaged in a public function, *see City of Little Rock v. Holland*, 42 S.W.2d 383, 384 (Ark. 1931), but under no circumstance could invoke *nullum tempus*. *See City of Fort Smith*, 41 Ark. at 49-50, 53. When the Arkansas Supreme Court eventually recognized that non-sovereign entities could rely on *nullum tempus*, the court could have imported a public-function analysis from its municipal-immunity jurisprudence, but it did not do so. Instead, the court has focused on whether an entity invoking *nullum tempus* seeks to enforce public rights. *See Jensen*, 190 S.W.2d at 979-80. Governmental immunity, like *nullum tempus*, is ultimately traceable to the prerogatives of the crown. But the two doctrines have evolved to support distinct public policies, *see City of Shelbyville v. Shelbyville Restorium, Inc.*, 451 N.E.2d 874, 876-77 (Ill. 1983), and have traveled divergent paths in Arkansas law. The breadth of common-law municipal immunity thus has little bearing on the proper scope of *nullum tempus*.

The Authority contends alternatively that even if *nullum tempus* applies only where an entity seeks to enforce public rights, the Authority satisfies that standard by its effort to ensure "proper construction of a functional sanitary sewer system, adequate disposal of wastewater, and the recovery of public funds." The Authority adds that the pollution caused by overflowing sewage implicates rights to public health or to a clean environment.

In *Jensen* and *Brighton*, the Arkansas Supreme Court contrasted public rights that would support *nullum tempus* with contractual or other proprietary rights. *Brighton Corp.*, 102 S.W.3d at 469; *Jensen*, 190 S.W.2d at 979. In drawing the line between public and proprietary rights, the court looked to the "character" of the actions at issue, rather than the public actor's broader policy objectives. *Brighton Corp.*, 102 S.W.3d at 469 (internal quotation omitted); *Jensen*, 190 S.W.2d at 979 (internal quotation omitted). In each case, the actor was entitled to invoke *nullum tempus* because its lawsuit was predicated on enforcing a particular public right: in *Brighton*, the Department of Environmental Quality sued to enforce environmental regulations, 102 S.W.3d at 469; the tax collector in *Jensen* sued to exercise the "sovereign right" to collect state taxes. 190 S.W.2d at 980.

Perhaps the right to a well-functioning sewer system or to a clean environment can be characterized as "public" in the abstract. But these are not the rights at issue in the Authority's action against Crossland and Fidelity. The Authority did not sue to enforce statutes or regulations, and a victory would not allow it to exercise any sovereign right. Instead, the Authority proceeded against Crossland and Fidelity on private-law theories: breach of contract, negligence, breach of warranty, and products liability. Each cause of action seeks to redress a broken promise to the Authority, or to obtain damages for harm caused by Crossland's deficient performance in carrying out its promised obligations. The rights at issue are thus the Authority's proprietary rights, not the rights of the public.

These proprietary interests are not transformed into public rights just because the Authority spent public money to repair the pipeline. Every action by a public entity impacts the public fisc to some degree. But if financial implications alone were enough to invoke *nullum tempus*, then the public-rights exception would swallow the general rule that statutes of limitations and repose run against municipal entities. On this point, *Jensen* is again instructive. There, the court distinguished the tax collector's claim for delinquent taxes from the claim at issue in *Clarke v. School*

*District No. 16*, 106 S.W. 677 (Ark. 1907).  In *Clarke*, a school district sued to recover funds wrongly paid out by the county treasurer, but the statute of limitations ran against the school district, because the action did not involve the exercise of a sovereign right.  *See Jensen*, 190 S.W.2d at 979-80; *Clarke*, 106 S.W. at 678.  Here, as in *Clarke*, the damages sought would replenish the public entity's coffers, but the relief would not vindicate a distinct public right.  The Authority therefore cannot invoke *nullum tempus* to avoid the statutes of limitations or repose.

\*     \*     \*

The judgment of the district court is affirmed.

———————————————————